UNITED STATES of America,
Plaintiff-Appellee,

v.

Timothy Alden HAYES,
Defendant-Appellant.

No. 78–5347.

United States Court of Appeals,
Fifth Circuit.

May 17, 1979.

Rehearing and Rehearing En Banc
Denied June 14, 1979.

James A. Moore, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., John M. Potter, George A. Kelt, Jr., Carl Walker, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

Hayes, a registered pharmacist, was convicted of one count of conspiracy to distribute Schedule II controlled substances in violation of 21 U.S.C. § 841(a)(1) and 21 C.F.R. 1306.04(a) promulgated thereunder and 35 counts of distribution of Schedule II drugs pursuant to prescriptions which he knew bore false names or were not issued in the usual course of professional practice. The substances were Dilaudid, a narcotic similar to morphine, and Preludin. Hayes asserts that the statute and accompanying regulation are unconstitutionally vague, that there was insufficient evidence to support the convictions, and that there was a variance. We reject all these claims and affirm the conviction.

We set out in the margin the statute and the regulation.[1] The purpose of the regulation is to define the circumstances in which a physician or pharmacist who is registered to dispense controlled substances may nevertheless be held to have violated the proscription against manufacturing, distributing or dispensing a controlled substance contained in 21 U.S.C. § 841. In *U. S. v. Moore*, 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975), the Supreme Court concluded that a doctor may be convicted for violations of § 841 when he dispenses controlled substances "outside the usual course of professional practice." *Id.* at 124, 96 S.Ct. at 337, 46 L.Ed.2d at 337.[2] The court rejected the argument that, because a doctor is registered with HEW and may therefore legally prescribe controlled substances, he is exempted from the criminal sanctions of § 841. A registered doctor or pharmacist is exempted from § 841's proscription only when he acts in the normal course of his professional activities. The challenged regulation merely restates the Court's conclusion in *Moore*.

In *U. S. v. Collier*, 478 F.2d 268 (CA5, 1973), this court rejected a physician's vagueness challenge to § 841 and accompanying regulations. The court drew its vagueness standard for testing § 841 from the Supreme Court's opinions in *Doe v. Bol-*

---

1. (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance;

    \* \* \* \* \* \*

    (b) Except as otherwise provided in Section 845 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

    (1)(A) In the case of a controlled substance in schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both.

    \* \* \* \* \* \*

    Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment . . .

    \* \* \* \* \* \*

21 U.S.C. § 841.

*Purpose of issue of prescription.*

(a) A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04.

2. This court held in *U. S. v. Rosen*, 582 F.2d 1032 (CA5, 1978), that to convict a physician of violating 21 U.S.C. § 841(a)(1) it is necessary to prove "(1) that he distributed or dispensed a controlled substance, (2) that he acted knowingly and intentionally, and (3) that he did so other than for a legitimate medical purpose and in the usual course of his medical practice." *Id.* at 1033.

*ton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and *U. S. v. Vuitch,* 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971). Both of those cases involved a constitutional attack on state statutes prohibiting doctors from performing an abortion unless the doctor concluded that it was necessary to preserve the mother's health. The Court concluded that whether an operation is necessary is the type of professional judgment doctors are "called upon to make routinely." *Doe v. Bolton, supra* at 192, 93 S.Ct. at 747, 35 L.Ed.2d at 212 (quoting *U. S. v. Vuitch, supra* 402 U.S. at 72, 91 S.Ct. at 1299, 28 L.Ed.2d at 601). The *Collier* court decided that a doctor's judgment whether a patient needs a Schedule II drug is also a routine judgment and that a criminal standard that only makes unlawful the prescribing of drugs outside the course of professional practice is not unconstitutionally vague. *Id.* at 272; *accord, U. S. v. Anderson,* 523 F.2d 1192, 1197 (CA5, 1975).

■ We turn then to application of statute, regulations, and case law to pharmacists. We need none of these to tell us that pharmacists usually are engaged in dispensing drugs on the basis of prescriptions issued by doctors. Specifically, § 309 of the Controlled Substances Act[3] prohibits dispensing Schedule II drugs except upon the prescription of a registered practitioner other than a pharmacist.[4] The regulation, 21 C.F.R. § 1306.04(a), teaches us that under some circumstances a purported prescription is not a prescription at all for purposes of the statute.

> [A]n order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and au-

thorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

Thus, a pharmacist may not fill a written order from a practitioner, appearing on its face to be a prescription, if he knows the practitioner issued it in other than the usual course of medical treatment. The regulation gives "fair notice that certain conduct is proscribed." *Rabe v. Washington,* 405 U.S. 313, 315, 92 S.Ct. 993, 994, 31 L.Ed.2d 258, 260 (1972).

■ Hayes contends that the regulation is unconstitutionally vague because of the language immediately preceding the foregoing, stating that "[t]he responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription." A pharmacist, he argues, cannot have a "corresponding responsibility" to that of a practitioner because he cannot prescribe at all but only dispense; an attempt by regulation to impose on him the obligations of a prescriber must, therefore, be ineffectual.[5] From this predicate he urges that the physician cases must be distinguished as applied to him; that is, a practitioner may be held criminally liable for prescribing outside the course of his professional practice, but a pharmacist may not be criminally liable based upon a "corresponding responsibility" because he

---

3. Public Law 91–513, Tit. II, § 309, 84 Stat. 1260 (1970) codified as 21 U.S.C. § 829.

4. Section 102(20) defines practitioner to mean "a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research." 21 U.S.C. § 802(20).

5. This aspect of Hayes' vagueness challenge is also in effect a claim that a pharmacist cannot be subjected to § 841's criminal penalties if he dispenses controlled substances pursuant to a prescription issued by a registered practitioner. Our discussion of the issue in vagueness terms also answers this contention. If the pharmacist knows that the prescription is not a prescription within the meaning of the regulations, he must decline to fill it or face the criminal sanctions of § 841.

cannot have responsibility as a prescriber nor does he have any reasonable means to fulfill a duty of establishing that the practitioner-prescriber who issued the order did so in the usual course of medical treatment. He points out that the most the pharmacist can do to verify the bona fides of a prescription is to check with the issuing practitioner; anything more would require him to examine the patient, which he is neither qualified nor legally permitted to do. The argument overlooks that a pharmacist can either fill a prescription or decline to do so. Hayes was charged with conspiracy to distribute controlled substances that were not issued for a legitimate medical purpose, and the jury was charged that he had to know they were not issued for a legitimate medical purpose. The same charge was given for the substantive offenses.

Verification by the issuing practitioner on request of the pharmacist is evidence that the pharmacist lacks knowledge that the prescription was issued outside the scope of professional practice. But it is not an insurance policy against a fact finder's concluding that the pharmacist had the requisite knowledge despite a purported but false verification. The pharmacist is not required to have a "corresponding responsibility" to practice medicine. What is required of him is the responsibility not to fill an order that purports to be a prescription but is not a prescription within the meaning of the statute because he knows that the issuing practitioner issued it outside the scope of medical practice.[6]

This court said in *Collier* that "Congress did not intend for doctors to become drug 'pushers'". 478 F.2d at 272. Nor do we think that Congress intended to allow pharmacists to aid doctors in becoming pushers. When a pharmacist fills a prescription that he knows is not a prescription within the meaning of the regulations he is subject to the penalties of § 841.

The sufficiency of the evidence argument is almost frivolous. Following is some of the circumstantial evidence. A tremendous number of prescriptions were filled by Hayes on the purported orders of a single doctor who, during the period involved, was an alcoholic and continually under the influence of alcohol and moving from one temporary lodging place to another. The volume of drugs was massive. Considering just one of the relevant customers, Claude Mead, during one month Hayes filled for him 34 prescriptions for Dilaudid, representing 3400 pills for which Meade paid $3,400, and 75 prescriptions for Preludin at $75 each, or $4,125. The following month Hayes filled for Meade 101 prescriptions for Dilaudid and 137 for Preludin, for which he was paid, respectively, $10,000 and $10,825. Meade testified that he sold the drugs on the street at a wholesale rate of $4.00 per Dilaudid tablet and $3.00 per Preludin tablet. During the relevant time Meade lived with the doctor off and on and part of the time kept him hidden out in various hotels and motels. Hayes possessed a supply of the doctor's prescription forms which he gave to customers to have filled out and signed by the doctor. The prices charged by Hayes for drugs were unusually high. The doctor himself testified that during the period in question he had no legitimate patients and that any prescriptions written by him were not written in the usual course of medical practice or for a legitimate medical purpose. The volume of prescriptions filled for a single individual as well as the prices charged by Hayes support the jury's conclusion that Hayes also knew that the prescriptions were not issued for a legitimate medical purpose.

Hayes complains that the government only cited § 1306.04 of the regulations in the indictment and that § 1306.05 should

---

**6.** The challenged regulation makes clear that this is the responsibility imposed on pharmacists. Standing alone, the phrase "corresponding responsibility" is not crystal clear, but when read in context the regulation gives adequate notice of proscribed conduct to pass muster. It is also evident that a pharmacist can fulfill his responsibility under § 1306.04 without practicing medicine. The facts of this case show how a pharmacist can know that prescriptions are issued for no legitimate medical purpose without his needing to know anything about medical science.

have also been cited. Assuming that § 1306.05 should have been cited, it is clear that Hayes cannot show he was prejudiced.

AFFIRMED.