**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph J. REY, Sr., Defendant-Appellant.**

**No. 82–1622.**

United States Court of Appeals, Fifth Circuit.

May 16, 1983.

Rehearing and Rehearing En Banc Denied July 26, 1983.

·Raymond C. Caballero, El Paso, Tex., for defendant-appellant.

Sidney Powell, Ricardo Gonzalez, Asst. U.S. Attys., San Antonio, Tex., Mervyn Hamburg, Atty., Appellate Sect., Crim. Div., Washington, D.C., for plaintiff-appellee.

Before THORNBERRY, GEE and WILLIAMS, Circuit Judges.

PER CURIAM:

The case presented is hard, though not difficult. Joseph J. Rey, Sr., a veteran El Paso attorney and minor civic leader, stands convicted of conspiracy to possess heroin with intent to distribute it. For this crime, he has been sentenced to a term of four years imprisonment and a substantial fine. His most serious complaint is that he was entrapped, or perhaps incriminated as a result of outrageous conduct, by government agents. We affirm.

Viewed most favorably to the verdict of conviction, the evidence established that in 1979 Rey received a telephone call from one Uranga, a former client and sometime government informant. Uranga, a shady character with police connections on both sides of the Border, was seeking assistance with immigration problems, Rey's legal specialty. In the course of this conversation, Rey inquired whether Uranga "could get ahold of any drugs for him," later specifying heroin.[1]

Uranga replied that he could do so, would get in touch with an unnamed drug source, and would call Rey later. Instead, he reported their conversation to the Drug Enforcement Administration, later agreeing to cooperate in its investigation of Rey. In the days ensuing, Uranga nagged Rey with many telephone calls, met with him on one occasion, and agreed to another meeting. It is fair to say that Rey's attitude appears to have been lukewarm. After postponements, a meeting took place at the Border. In a recorded conversation, Rey asked about

---

1. Uranga's testimony on this point at Rey's two earlier trials, of which more later, was to the same effect.

the drugs, Uranga replying that two kilograms of 65 percent purity were available at $45,000 each. To this Rey responded that he knew nothing of drug quality and was only someone who had purchase money. Arrangements were made for further negotiations to be carried on between Uranga and a trusted employee of Rey's, more knowledgeable in such matters. In due course, a drug transaction occurred.

Suffice it to say that the evidence of these later doings and of Rey's indirect participation in them is ample but does not bear significantly on Rey's entrapment/outrageous conduct defense except, perhaps, in one particular. Rey's agent testified that Rey directed him to determine whether Uranga actually had drugs and what their quality was, expressing an intention to turn the information over to the authorities. The record also indicates that he may have entertained thoughts of doing so, but he never did. This is the pertinent evidence.

On it, Rey's claim of entrapment must fail. In the first place, the defense was not available to Rey. It is the law of this circuit that one may not claim he was entrapped into a criminal act without first admitting that he did in fact commit it. *United States v. Nicoll,* 664 F.2d 1308 (5th Cir.1982). A criminal prosecution such as this is not a game. It incorporates a moral content and an ultimate concern with guilt or innocence that are inconsistent with permitting the accused to say, "I didn't do it, but if I did, the government tricked me into it." *United States v. Brooks,* 611 F.2d 614 (5th Cir.1980). Rey made no such admission. In the second, even were the defense available, the evidence set out above is sufficient to support a rational conclusion that this crime had its birth in the mind of Rey, not in any design implanted there by the government. This is fatal to Rey's contention, since that is the test. *United States v. Webster,* 649 F.2d 346 (5th Cir.1981) (en banc).

The claim of outrageous conduct on the government's part likewise lacks merit. To be sure, once the government learned that Rey was seeking to buy drugs, it pursued offering him an opportunity to do so assiduously. Yet though he appeared to blow hot and cold during that pursuit, Rey—having broached the matter at the outset—met with the informant Uranga, procured an agent to pursue negotiations with him, expressed concern and the need for expert advice regarding price and quality of the drugs, and followed the transaction through conferences with his agent. We perceive no outrage. *Cf. Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

Rey's next contention is that since the evidence at one or both of two inconclusive earlier trials for this offense was insufficient, his third trial and conviction constituted double jeopardy. In this connection, he claims that our decision of his earlier appeal incorrectly denied him an opportunity to make this claim before being retried. *United States v. Rey,* 641 F.2d 222 (5th Cir.1981), following *United States v. Becton,* 632 F.2d 1294 (5th Cir.1980). Whenever and however made, the contention fails. Rey does not specify wherein he asserts that the evidence at his earlier trials was insufficient; indeed, he concedes on brief that it was similar in all three. We have examined the three records; in none was it insufficient.

We have also examined with care Rey's other claims for reversal. Only one merits discussion. Pursuant to Local Rule 500–2, Rey sought to interview his jurors in quest of information upon which to predicate a claim of misconduct. That rule requires leave of court granted upon good cause shown. Rey's motion for leave to do so asserted merely that because he was a well-known attorney there was reason to suspect the introduction of prejudicial information into the jury room. The trial judge found this showing inadequate, and we agree. Rey also attacks Rule 500–2 as invalid on various grounds. We have, however, recently upheld its validity against such attacks as his. *United States v. Davila,* 704 F.2d 749 (5th Cir.1983).

AFFIRMED.