**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold Donald HENRY,
Defendant-Appellant.**

**No. 83–1366
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 12, 1984.

Opinion on Granting of Rehearing En Banc April 23, 1984.

John H. Hagler, Curtis D. Glover, Dallas, Tex., for defendant-appellant.

James T. Jacks, Dallas, Tex., for plaintiff-appellee.

Before GEE, POLITZ and JOHNSON, Circuit Judges.

GEE, Circuit Judge:

Appellant Henry, a licensed pharmacist, appeals his conviction by a jury on eleven counts of dispensing controlled substances for improper purposes in violation of 21 U.S.C. § 841(a)(1) and 21 C.F.R. §§ 1306.-04(a) and 1306.06. We reject the three grounds he advances for reversal and affirm his convictions.

### Entrapment

■ Evidence shows that Henry filled large numbers of prescriptions for such substances at the behest of a paid government informant and an undercover police agent. Further evidence shows that he often did so under extremely dubious circumstances, circumstances that amply supported the jury's conclusion that he knew the drugs he dispensed were to be used for recreational, not medical, purposes.[1]

Taking the stand in his own behalf, Henry admitted filling all prescriptions charged in the indictment but flatly and steadfastly denied that in so doing he ever intended to dispense drugs for non-medicinal purposes. Relying on authority that a defendant may not at one and the same time deny committing a crime and assert that he did commit

it but was entrapped into doing so by the government, the trial judge declined to submit Henry's requested jury instructions on entrapment. The record contains evidence adequate to support an inference by the jury favorable to Henry on the issue. Thus the question is squarely posed for decision: may a defendant admit the factual acts upon which his criminal prosecution is based but deny that they were done with culpable intent, while at the same time contending that although he did act with criminal intent, that intent was first implanted in his mind by the government—so that he must be excused from punishment for *criminal* acts done with *criminal* intent. The question is a somewhat embarrassing one for our Court, since candor requires us to acknowledge that we have already spoken to it with two voices. Which line of authority are we to follow today?

### Circuit Entrapment Authority

On the one hand is to be found *United States v. Greenfield,* 554 F.2d 179 (5th Cir. 1977), a decision on facts all but identical to those of today's case. There, as here, a medical practitioner admitted prescribing drugs, denied doing so with culpable intent, sought an entrapment charge, and was denied it because "the entrapment defense is not available until the defendant admits the commission of the crime." *Id.* at 181. A panel of our Court reversed, first noting the settled rule of our Circuit that a defendant may not claim entrapment and at the same time deny having committed the physical *acts* charged, but going on to say

> We do not believe that it is impermissibly inconsistent under these circumstances for a defendant also to argue that to the extent that the jury may find culpability on his part, he was entrapped. The defendant may say, "I did not go so far as to prescribe drugs without a legitimate medical purpose, but to the extent that you find that I did, I was entrapped." For instance, in this case the defendant

---

1. Such as repeatedly filling multiple prescriptions in various names, some fictitious, advising the informant on how to employ the drugs in unauthorized ways, hearing him state that he planned to share the pills with others, and the like.

was charged with having dispensed drugs illegally on ten different dates. The jury convicted him for the last three prescriptions. The jury evidence concluded that while the early prescriptions for Ms. Conner were legitimate, the defendant knew as time passed that her numerous visits for drugs were not proper. We are persuaded under these circumstances it is permissible for the defendant to argue to the jury that he was entrapped. That is, he may argue that he did not knowingly dispense the drugs without a legitimate medical purpose or, alternatively, he may argue that to the extent that he may have prescribed without a legitimate medical purpose, he was not predisposed to do so.

\* \* \* \* \* \*

We do not decide that the defendant is entitled to an entrapment defense upon retrial. We simply hold that the entrapment defense is not so inconsistent with the defense of lack of intent under the circumstances of this case as to preclude the alternative defenses.

*Id.* at 183 (footnote omitted).

There would be no flaw in this plausible argument had Greenfield taken consistent positions on each of the charges; it is certainly conceivable that he was innocent of the first seven counts (as the jury found) and entrapped as to the last three, and there neither is nor could be any requirement that he take the same position as to each charge made in the indictment. The difficulty is that he did in fact seek to do so; adopting as to *each* act charged the inconsistent position that he acted without culpable intent (in his sworn testimony)— and that the culpable intent with which he acted was implanted in his mind by the government (by requesting the entrapment instruction). If there be degrees of inconsistency, as the passage quoted from *Greenfield* suggests, this seems an instance of a high one: not only that a culpable intent both did and did not exist in the same person at the same time, but that if it did it had a particular cause. See also *United States v. Garrett,* 716 F.2d 257 (5th Cir.

1983) (conceded payments were intended as political contributions, not bribes; but if intended as bribes, entrapment).

It is thus clearly apparent that *Greenfield* and *Garrett* squarely address the issue before us and hold that a criminal defendant may both deny that he acted with culpable intent and assert that the culpable intent with which he acted was implanted in his mind by the government.

On the other hand, an earlier line of authority in the Circuit, extending backward in time at least to 1967, affirms without particularized discussion criminal convictions in which only culpable intent was in issue—the factual acts being admitted—and a requested instruction on entrapment was refused because that intent was not admitted. The background of these opinions is further complicated by language in many of them to the effect that the criminal *act* was denied. One might take such language as a reference to the physical acts alone. For example, in *McCarty v. United States,* 379 F.2d 285 (5th Cir.1967), we stated:

> Once on the stand McCarty had a choice: deny the acts constituting the offense or admit that he committed the acts but contend he was entrapped. Having elected to deny that he committed the acts charged he was not entitled to an instruction on entrapment.

379 F.2d at 287. The opinion makes plain, however, that it was solely a culpable intent that McCarty denied, not his factual acts themselves:

> McCarty testified that he *thought* a bundle of dirty clothes given to him by ... a government informer contained illicit diamonds and no marijuana and that *he had no intention* of dealing with marijuana. . . .

379 F.2d at 286 n. 1 (emphasis added).

Similar instances abound. In *United States v. Brooks,* 611 F.2d 614 (5th Cir. 1980), Brooks did not deny selling guns illegally: only that he intended to violate the law. 611 F.2d at 616–17. We held:

> No error is alleged concerning the entrapment defense. In view of this it is

doubtful that we should even consider the alternative defense. For there is, as we have recently said, "a veritable legion of opinion in this Circuit" that a defendant may not simultaneously plead entrapment and deny committing the acts on which the prosecution is predicated. *United States v. Greenfield,* 554 F.2d 179, 181 (5th Cir.1977), *cert. denied* 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978), and cases cited therein. The rationale for the rule is based on the inherent inconsistency of saying at the same time, "I didn't do it," and "the government tricked or seduced me into doing it." The continued cogency of this position has been debated, *see United States v. Demma,* 523 F.2d 981 (9th Cir.1975) (en banc), and *United States v. Greenfield, supra,* but as a panel we are bound by the law of the circuit.

664 F.2d at 618.

The same is true of our more recent decision in *United States v. Nicoll,* 664 F.2d 1308 (5th Cir.1982). There we stated:

> The law of this circuit requires that to assert the defense of entrapment, the defendant must admit he committed the *acts* on which the prosecution is predicated. *E.g., United States v. Brooks,* 611 F.2d 614, 618 (5th Cir.1980). Nicoll's defense throughout the case was that he only wished to "lead on" the DEA in the hope of getting a small sample of cocaine for his personal use, and specifically denied an *intent* to distribute cocaine as charged in the indictment. Having failed to assert entrapment as a defense at trial, Nicoll cannot now raise it on appeal.

664 F.2d at 1314 (emphasis added). Clearly only Nicoll's intent was disputed; nevertheless we ruled that he had "failed to assert entrapment as a defense."

Finally, in *United States v. Rey,* 706 F.2d 145 (5th Cir.1983), we stated, "It is the law

of this circuit that one may not claim he was entrapped into a criminal act without first admitting that he did in fact commit it." 706 F.2d at 147. In that case the defendant did not seriously dispute his involvement in the acquisition of forbidden drugs. Instead he weakly suggested that his intent in doing so was not a culpable one. *Id.*

These authorities, then, draw no distinction pertinent to present purposes between admitting physical acts and admitting the intent with which they must have been committed in order to have constituted them a crime: where only intent was denied, they declare that—the *criminal* acts not being admitted—a plea of entrapment should not be entertained. We cannot follow both conflicting lines of authority; and since we must decide the issue squarely presented by this case, we must choose to follow one or the other. For reasons to be stated, we choose the older line, that which refuses to entertain the inconsistent positions as to intent.[2]

The choice we make is a narrowly circumscribed one. It is not open to us to question the validity of the entrapment defense, one that is unique to our American jurisprudence in making a matter of exculpation of that which all other criminal justice systems consider in mitigation only. Such a course is clearly foreclosed by Supreme Court authority. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Nor can we reconsider the question whether commission of the physical acts charged as a crime by the prosecutor must be conceded before the entrapment defense becomes available; our authorities—including *Greenfield* and *Garrett*—so declare with one voice, and we as a panel could not gainsay them if we wished. It only remains for us to reason within the lines of these givens.[3]

---

**2.** That it *is* the older line would suffice as a reason. *Ryals v. Estelle,* 661 F.2d 904 (5th Cir.1981).

**3.** As we have noted in passing, the entrapment defense is a unique one, unacknowledged by any law but ours. Even so, it exists by Su-

preme Court decree, and a cogent argument can be made that we should entertain it upon the same terms as that of insanity, for the assertion of which no admission of any character whatever is required.

Doing so requires us to acknowledge at the outset that the entrapment defense is viewed in the writings of our Circuit as being in the nature of a confession and avoidance. Nor can we dispute the logic of such a view: until it becomes apparent that a *crime*, an act or acts done with an accompanying culpable intent, has been committed, no occasion arises to examine the provenance of that intent. To instance a familiar and striking fictional example,[4] a surgeon who amputates the legs of an injured and unconscious railroad worker commits no criminal act at all if he does so with an honest intent, however benighted, of benefitting his patient; it is otherwise entirely if he does so from a malevolent intent to injure his helpless victim.[5] In such a situation, his admission that he physically performed the amputation concedes little indeed if, at the same moment, he maintains the probity of his intent in doing so: the "act" that he concedes he performed is simply not a criminal one, and his "concession" that he committed it is no concession at all. Instead, it is a defense: "I believed that I was doing the right thing."

If, then, concession of the "criminal act" is to be demanded as a condition of entertaining an entrapment defense, a concession of the mere physical act is nothing to the purpose; for without the intent it is not a *criminal* act at all that has been conceded. In crimes, moreover, of which culpable intent is an element, it is certainly at least as significant a one as any other, so that refusing to concede the commission of more than two-thirds or three-fourths of the elements of the crime is as effectively done by disputing intent as by disputing any of the crime's requisite factual elements. By what rhyme or reason, we may fairly ask, does *Greenfield* select this element to exempt from the required concessions rather than any other? We ascertain none except the opinion's suggestion that it is somehow not "impermissibly" inconsistent to deny culpable intent with one breath and admit it in the next. That intent, however, is an element of the crime like any other, and while it may be easier to both admit and deny it than to do so as to a physical act, it seems to us every whit as inconsistent.

Since we find no significant force in the reasoning by which an exception is made for the element of intent alone from the concessions required to raise the entrapment defense, we conclude that this element should be treated no differently from any other and that our authorities exacting a concession of the *criminal* acts mean exactly what they say. It follows that if the acts conceded are not criminal ones absent culpable intent, then culpable intent must be conceded before entrapment's inquiry into where the intent began becomes material.

### Evidence of Extrinsic Offenses

■ Henry complains that testimony concerning other prescriptions than those charged in the indictment, written by one Dr. Thomas, were evidence of extrinsic offenses, dissimilar to those charged, and highly prejudicial. None of the prescriptions alleged in the indictment was written by Dr. Thomas. The extrinsic evidence was proffered and admitted as showing the relationship between the defendant and the doctor, to impeach defendant's testimony that he had no knowledge of the confidential informant's intention to misuse the drugs, and generally to show acts substantially identical to the charged offenses.

"The standard for admission of evidence pursuant to Fed.R.Evid. 404(b) requires the application of the two-step test.... First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice." *United States v. Wilkes*, 685 F.2d 135, 137–138 (5th Cir.1982); *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). The district court carefully followed the

---

4. Henry Bellamann, *King's Row.*

5. Malpractice, of course, is another matter.

*Beechum* test in ruling the evidence admissible, finding that since the evidence was offered to show intent and motive, it was not offered solely to impugn Henry's character. As to the second step, the court observed:

Obviously, it's relevant, because it concerns acts which are alleged and which the evidence show occurred that are involved in this case. And utilizing the balancing test under Rule 403, I think that probative value in this case far outweighs the danger of undue prejudice.

In *United States v. Shaw*, 701 F.2d 367, 386 (5th Cir.1983), we enunciated the standard for reviewing challenges to the admission of extrinsic evidence on appeal: "[T]he duty of the appellate court is to assess its relevancy and probative value, and the district court's ruling will be reversed '[r]arely and only after a clear showing of prejudicial abuse of discretion.'"

The extrinsic evidence provides background information concerning Henry's practices in dispensing Schedule II drugs to the same individual on a frequent basis in large quantities under at least questionable circumstances as to legitimate medical needs, and, thus, shows substantially identical acts. Thus, it is relevant and probative. Although the evidence also does pertain to character and is prejudicial, the district court did not abuse its discretion in admitting it.

### Due Process

■ Appellant charges 21 C.F.R. § 1306.04(a) (1982) as violating the due process requirement of being rationally related to a legitimate government interest. The regulation provides that:

A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act ... and the person knowingly filling such a purported prescription, as well as the person issuing it,

shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.4(a) (1982). This regulation and the corresponding statute, 21 U.S.C. § 841, have been previously challenged as unconstitutional, albeit on the ground of vagueness. *United States v. Hayes*, 595 F.2d 258 (5th Cir.), *cert. denied*, 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 89 (1979); *see also United States v. Collier*, 478 F.2d 268 (5th Cir.1973) (challenge by physician). On that occasion we interpreted the regulation as it affects pharmacists as follows:

Thus, a pharmacist may not fill a written order from a practitioner, appearing on its face to be a prescription, if he knows the practitioner issued it in other than the usual course of medical treatment. The regulation gives "fair notice that certain conduct is proscribed."

595 F.2d at 260 (citation omitted).

Verification by the issuing practitioner on request of the pharmacist is evidence that the pharmacist lacks knowledge that the prescription was issued outside the scope of professional practice. But it is not an insurance policy against a fact finder's concluding that the pharmacist had the requisite knowledge despite a purported but false verification. The pharmacist is not required to have a "corresponding responsibility" to practice medicine. What is required by him is the responsibility not to fill an order that purports to be a prescription but is not a prescription within the meaning of the statute because he knows that the issuing practitioner issued it outside the scope of medical practice.

595 F.2d at 261 (footnote omitted).

The challenged regulation makes clear that this is the responsibility imposed on pharmacists. Standing alone, the phrase "corresponding responsibility" is not crystal clear, but when read in context the regulation gives adequate notice of proscribed conduct to pass muster. It is also evident that a pharmacist can fulfill his responsibility under § 1306.04 without practicing medicine.... [A] pharmacist can know that prescriptions are issued for no legitimate medical purpose without his needing to know anything about medical science.

595 F.2d at 261, n. 6.

Appellant argues that the regulation is irrational precisely because a pharmacist

cannot determine whether a controlled substance was properly prescribed, but must rely on the judgment of the physician. We addressed this argument in *Hayes.* 595 F.2d at 260–61. The regulation is not irrational: the "corresponding responsibility" *is* corresponding. The physician's responsibility is not to prescribe improperly while the pharmacist's responsibility is not to dispense a controlled substance for non-medical reasons. The regulation does not place an unduly heavy burden on the pharmacist. Proof is required that the pharmacist had reason to believe that the prescription was not issued in the usual course of professional treatment. Prescriptions brought in at frequent intervals by the same individual who mentions plans to share the prescriptions with others can provide cause for a pharmacist to believe the prescriptions are invalid despite their verification by the prescribing physician. The regulation is not unconstitutional in placing a corresponding responsibility on a pharmacist that controlled substances be prescribed in the usual course of professional responsibility. *See United States v. Hayes,* 595 F.2d at 260–61; *accord United States v. Lawson,* 682 F.2d 480, 482–83 (4th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 348, 74 L.Ed.2d 387 (1982).

### Conclusion

Since we find that no error was committed by the district court, its judgment is

AFFIRMED.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM and DAVIS, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.