McCLENDON, J.
12This is an appeal from a district court judgment affirming sanctions and fines levied by the Louisiana Board of Pharmacy against a pharmacist and pharmacy after an administrative hearing. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Taddese Tewelde was licensed as a pharmacist in 1977. Mr. Tewelde owns and serves as a pharmacist at Tewelde’s Lafitte Drugs (Lafitte Drugs) in Lafitte, Louisiana, which opened in 1981.
The population of Lafitte is approximately 1,500 people. It is located on a two-lane highway about 30 minutes south of the west bank of New Orleans. It is on a peninsula-like projection close to the Gulf of Mexico and is surrounded by water on both sides. As Mr. Tewelde affirmed, one has “to be going to Lafitte to get there” and it is “not on the way to anywhere else.”
During the first three months of 2010, Lafitte Drugs ordered a significantly larger amount of schedule II drugs[1] from its wholesale supplier, Morris & Dickson Drug Company, than it had typically ordered in the past. Because of this substantial increase in sales of schedule II narcotics to Lafitte Drugs, Morris and Dickson, as it was required to do, reported the purchases to the United States Department of Justice Drug Enforcement Administration (DEA). On April 8, 2010, after learning that most of the prescriptions were from Texas health care providers and that those having them filled were paying with cash, Morris and Dickson ceased all sales of controlled dangerous substances to the pharmacy.
After reviewing reports from the Automated Reports Consolidated Order System (ARCOS), a database where all distributors report sales of schedule II Rand schedule III substances,[2] the DEA, as well *804 as the Louisiana Board of Pharmacy, began an investigation into the pharmaceutical sales at Lafitte Drugs. Specifically, ARCOS reports reflected that for the year 2009, Lafitte Drugs purchased a total of 39,200 dosage units of oxycodone, a schedule II narcotic, ranking it the 307th highest purchaser in the state. In contrast, in the first three months of 2010, Lafitte Drugs purchased 147,300 units of oxyco-done, ranking it the 3rd highest purchaser in the state behind only two pharmacies in metropolitan areas.[3] Further, Louisiana pharmacies purchased an average of only 9,194 dosage units of oxycodone for the three months in 2010.
The Louisiana Board of Pharmacy also operates a Prescription Monitoring Program (PMP). PMP analysis of the controlled dangerous substance prescriptions dispensed by Lafitte Drugs for the three and a half month period of 2010, i.e. January 1 to April 14, 2010, established that 78% (3,048 of 3,912) were from Texas pres-cribers, while only 21.5% (843 of 3,912) were from Louisiana prescribers. Additionally, only 3% of the drugs dispensed from Louisiana prescribers were oxyco-done products, while 30% of the drugs dispensed from Texas prescribers were ox-ycodone products.
On April 14, 2010, two DEA investigators and Ben Whaley, a compliance officer for the Louisiana Board of Pharmacy, investigated Lafitte Drugs. When asked about the large number of out-of-state prescriptions, Mr. Tewelde indicated that pri- or to filling any of the schedule II prescriptions, the pharmacy would verify the prescription by calling the office of the health care provider that issued the prescription and providing the office with the patient’s name and date of birth. In turn, the health care provider would verify the prescription. | .(Additionally, Mr. Tewelde indicated that he only filled prescriptions for individuals with Louisiana identification cards, and he maintained photocopies of the identification cards.[4]
Given that the Texas prescriptions were mainly from the Houston area, Mr. Tew-elde was questioned regarding why these individuals would travel 375 miles to Lafitte, Louisiana, to have the prescriptions filled. Mr. Tewelde responded that “[o]ne of the main reason[s] is probably they couldn’t fill it somewhere else,” yet he could not explain why other pharmacies would not fill the prescriptions. Mr. Tew-elde also admitted that the individuals from Texas never used insurance, paying either with cash or a credit card, with some single prescriptions costing between $2,500.00 to $3,500.00.
Rasheda Carter, a relief pharmacist at Lafitte Drugs, declined to fill the out-of-state prescriptions and testified that it did “cross [her] mind” why people would drive all the way to Lafitte Drugs from Houston to get their prescriptions filled. She noted that often times two or three people would come in together with schedule II prescriptions to be filled. She also testified that other pharmacies where she was working in the area during the same time frame were not getting Texas prescriptions.
Following an investigation, the Louisiana Board of Pharmacy issued Complaint *805 Number 10-0097 against Tewelde’s Lafitte Drugs, Permit No. 1159-IR, and Complaint Number 10-0098 against Taddese Tewelde, License No. 11262, alleging violations of a multitude of state and federal statutes and regulations.
As noted by the Board, a prior inspection in 2008 revealed that the pharmacy had been filling prescriptions issued by Texas prescribers and that the pharmacy had been informed about “corresponding responsibility” of a pharmacist when filling Texas prescriptions. During the 2008 inspection, several other problems were identified, including that the pharmacist on duty was not signing the pharmacist register, that some post-dated prescriptions had been | ¿filled early, and that some prescriptions containing only the physicians’ stamped or electronic, as opposed to handwritten, signature had been filled. These issues were also discussed with Lafitte Drugs at that time.
Mr. Whaley, who had performed the previous inspection, indicated that the 2010 investigation revealed that many of the same issues that had been previously discussed with the pharmacy persisted after the 2008 inspection. He noted that some of the Texas prescriptions had been issued with only a doctor’s stamped signature on the hardcopy of the prescription and that some prescriptions had been filled prior to the date they had been authorized. Additionally, the relief pharmacist had not signed the pharmacist register since March 2, 2010.
Mr. Whaley also opined that although Lafitte Drugs claimed to be fulfilling its responsibility by verifying the out-of-state prescriptions, Mr. Tewelde continued to dispense prescriptions issued by two Texas prescribers after their DEA licenses were suspended.[5] DEA officials also noted that many of the Texas prescriptions filled by Lafitte Drugs were not issued on valid Texas prescription pads. Additionally, DEA noted that nurse practitioners in Texas had issued some of the schedule II narcotic prescriptions filled by Lafitte Drugs, although nurse practitioners in Texas are not authorized to issue schedule II prescriptions.
Following a hearing, the Louisiana Board of Pharmacy (the Board), found Mr. Tewelde guilty of violating a number of statutes and regulations, specifically including the following:
LSA-R.S. 37:1241(A)(1): Practiced or assisted in the practice of pharmacy, or knowingly permitted or has permitted anyone in his employ or under his supervision to practice or assist in the practice of pharmacy, in violation of the provisions of [the Louisiana Pharmacy Practice Act] and any rules and regulations promulgated thereto in accordance with the Administrative Procedure Act.
LSA-R.S. 37:1241(A)(3): Committed repeated occasions of negligence or incompetence in the practice or assistance in the practice of pharmacy.
I rLSA-R.S. 37:1241(A)(10): Has departed from or failed to conform to the minimal standards of acceptable and prevailing pharmacy practice, whether or not actual injury to a patient has occurred.
LSA-R.S. 37:1241(A)(15): Has evaded, or assisted, directly or indirectly, another person in evading any local, state or federal laws or regulations pertaining to the practice of pharmacy.
*806 21 C.F.R. § 1306.11(a): A pharmacist may dispense directly a controlled substance listed in Schedule II ... only pursuant to a written prescription signed by the practitioner ...
21 C.F.R. § 1306.12(b)(1)(h): An individual practitioner may issue multiple prescriptions authorizing the patient to receive a total of up to a 90-day supply of a Schedule II controlled substance provided ... The individual practitioner provides written instructions on each prescription ... indicating the earliest date on which a pharmacy may fill each prescription ...
LAC 46:LIII.515(A): Prospective Drug Utilization Review. A pharmacist shall review the patient record and each prescription presented for dispensing for purposes of enhancing pharmacy care and therapeutic outcomes by recognizing the following potential situations: 1. drug over-utilization or under-utilization; 2. Therapeutic duplication; ... 7. clinical abuse/misuse.
LAC 46:LIII.515(B): Prospective Drug Utilization Review. Upon recognizing any of the above situations, the pharmacist, using professional judgment, shall take appropriate actions.
LAC 46:LIII.1127(A): Register. The pharmacy shall maintain a register in which each individual pharmacist dispensing a prescription shall sign a log each day, attesting to the fact that the information entered into the electronic record keeping system has been reviewed that day, and is correct as stated.
LAC 46:LIII.2745(A)(3): Prescriptions. Practitioners Authorized to Issue Prescriptions. A prescription for a controlled substance may be issued only by an individual practitioner who is ... in possession of a valid registration from the U.S. Drug Enforcement Administration (DEA), unless otherwise exempted from that registration requirement.
LAC 46:LIII.2747(E)(3): Dispensing Requirements. Professional Conduct. Forged Prescriptions. It is unlawful to forge a prescription, or to dispense a forged prescription, for a controlled substance. The pharmacist or dispensing physician shall exercise professional diligence in determining the validity of a prescription as to the practitioner’s authority and/or patient’s identity, in order to prevent misrepresentation, fraud, deception, subterfuge, conspiracy, or diversion of controlled substances.
More significantly, the Board also found that Mr. Tewelde violated the corresponding responsibilities of a pharmacist pursuant to LAC 46:LIII.2747(E) and (E)(2)(b), and that the pharmacy was guilty of violating the same statutes |7and regulations, with one additional violation relating only to a pharmacy. See LAC:46:LIII.1305(A).[6]
The Board ordered that Mr. Tewelde’s license be suspended for an indefinite period of time and prohibited any application for reinstatement for a period of ten years. The Board also ordered that the pharmacy’s permit be suspended for a period of five years with execution thereof stayed, and then placed on probation for a period of five years, beginning at the original suspensive period. Additionally, Mr. Tew-elde was ordered to pay a fine of $15 for each of the 3,048 prescriptions identified by the Board as being dispensed contrary to the pharmacy laws and rules for a total of $45,720.00, and the pharmacy was ordered to pay a fine of $35 each for those *807 same 3,048 prescriptions for a total of $106,680.00.
Following the Board’s denial of their application for rehearing, Mr. Tewelde and Lafitte Drugs appealed to the district court. The district court affirmed the decision of the Board, reasoning as follows:
After a review of the law and argument of the parties, the court determines that the Board sustained its burden of proof in finding that the prescriptions were not issued for a legitimate medical purpose and that [Mr. Tewelde] failed to discharge his corresponding responsibility when they were dispensed. The court notes, as did the Board, that Lafitte, La. is a very rural out of the way community located quite a distance from the Texas city where most of these prescriptions were written. In addition, there is a duty placed on a pharmacist to ascertain that a prescription for a drug commonly abused ... is a valid prescription. Despite plaintiffs assertion that phone calls were made to doctors’ offices when he got possibly suspicious prescriptions, there was evidence that this was [not] done. In particular, as noted above, many prescriptions were written by Texas doctors who had surrendered their DEA licenses prior to the date the prescription was filled.
In addition, the court does not find that the amount of the fines imposed against Mr. Tewelde and the pharmacy were excessive. The court finds that these fines represented the seriousness of the offenses committed by the plaintiff and were appropriate under the circumstances.
Mr. Tewelde and Lafitte Drugs (hereinafter sometimes collectively referred to as “appellants”) have appealed, assigning the following as error:
|SI- The evidence adduced by the Louisiana Board of Pharmacy neither supports nor sustains, by a preponderance of evidence, the necessary finding of fact that Pharmacist Tew-elde violated his statutory and regulatory corresponding responsibility in dispensing the challenged 3,048 prescriptions!.]
II. The Louisiana Board of Pharmacy acted in abuse of its discretion in denying Tewelde’s motion for rehearing based on the post-hearing production of phone records on his subpoena duces tecum substantiating the affirmative steps [that] were taken to confirm that that the challenged prescriptions were issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice!.]
III. In alternative to the foregoing two assignments, the Louisiana Board of Pharmacy abused its discretion in assessing fines against petitioners for 3,048 prescriptions when no finding of fact established that violations in all 3,048 instances occurred!,] [a]nd whether the fines, sanctions, and penalties imposed were exeessive[.]
STANDARD OF REVIEW
The Louisiana Administrative Procedure Act provides for judicial review over administrative adjudications. Louisiana Revised Statutes 49:964(G) provides:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions;
*808 (2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
19Pursuant to paragraph G(6), the district court is a fact finder that weighs the evidence and makes its own conclusions of fact by preponderance of the evidence. Multi-Care, Inc. v. State, Dept. of Health & Hospitals, 00-2001, p. 4 (La.App. 1 Cir. 11/9/01), 804 So.2d 673, 675. Accordingly, while this court does not defer to the district court’s legal conclusions, we do defer to the district court’s factual determinations and use a manifest error standard of review where the legislature has empowered it with the function of fact finding. Id.
DISCUSSION
Appellants challenge the findings of violations of the regulations concerning “corresponding responsibility” pursuant to 21 C.F.R. § 1306.04(a) and LAC 46:LIII.2747(E) and (E)(2)(b), and how those violations relate to the Board’s findings regarding LSA-R.S. 37:1241(A)(1)(3)(10), and (15).
Appellants contend that the evidence adduced by the Board does not support and sustain by a preponderance of the evidence that Mr. Tewelde violated his statutory and regulatory corresponding responsibility in dispensing the 3,048 prescriptions. “Corresponding responsibility” is the regulatory requirement, both federal and state, recognizing that, while a physician has the primary responsibility to issue a prescription for a controlled dangerous substance for a legitimate medical purpose, a corresponding responsibility rests with the dispensing pharmacist to ascertain that the prescription was issued for a legitimate medical purpose in the usual course of professional practice.
Specifically, 21 C.F.R. § 1306.04(a) provides:
A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fílls the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly 'filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances. [Emphasis added.]
*809 |inAnd the state regulation at issue, LAC 46:LIII.2747(E), provides, in pertinent part:
Professional Conduct. A license, registration, certification, permit, or any other credential deemed necessary to practice, or assist in the practice of, pharmacy may be subject to discipline when deviating from primary or corresponding responsibility to avert the following prohibited acts.
[[Image here]]
2. Corresponding Responsibility
a. Medical Purpose. The prescribing practitioner has the primary responsibility to issue a prescription for a controlled substance for a legitimate medical purpose, but a corresponding responsibility rests with the pharmacist or dispensing physician dispensing said prescription to ascertain that said prescription was issued for a legitimate medical purpose in the usual course of professional practice.
b. Authenticity. A pharmacist or dispensing physician shall exercise sound professional judgment to ascertain the validity of prescriptions for controlled substances. If, in the pharmacist’s professional judgment, a prescription is not valid, said prescription shall not be dispensed.
The federal Fifth Circuit, in interpreting 21 C.F.R. § 1306.04(a), indicated that “[sjtanding alone, the phrase ‘corresponding responsibility' is not crystal clear, but when read in context the regulation gives adequate notice of proscribed conduct to pass muster.” United States v. Hayes, 595 F.2d 258, 261, n. 6 (5th Cir.1979). “What is required of [a pharmacist] is the responsibility not to fill an order that purports to be a prescription but is not a prescription within the meaning of the statute because he knows that the issuing practitioner issued it outside the scope of medical practice.” Hayes, 595 F.2d at 261. The court noted that under certain circumstances, “a pharmacist can know that prescriptions are issued for no legitimate medical purpose without his needing to know anything about medical science.” Hayes, 595 F.2d at 261, n. 6.
When 21 C.F.R. § 1306.04(a) was later challenged on due process grounds, the Fifth Circuit, in finding the provision constitutionally valid, noted:
The regulation is not irrational: the “corresponding responsibility” is corresponding. The physician’s responsibility is not to prescribe improperly while the pharmacist’s responsibility is not to dispense a controlled substance for non-medical reasons. The regulation does not place an unduly heavy burden on the pharmacist. Proof is required that the pharmacist had reason to h ¶ believe that the prescription was not issued in the usual course of professional treatment. ... The regulation is not unconstitutional in placing a corresponding responsibility on a pharmacist that controlled substances be prescribed in the usual course of professional responsibility-
United States v. Henry, 727 F.2d 1373, 1379 (5th Cir.1984).
Appellants contend that the findings of fact made by the Board as they relate to Mr. Tewelde’s corresponding responsibility, are little more than general observations about the number of dosage units Lafitte Drugs ordered in the first quarter of 2010 and the percentage of prescriptions written by Texas physicians. Specifically, appellants point to the following finding made by the Board:
Based upon the number of Schedule II prescriptions dispensed by Tewelde to patients of Texas prescribers; the distances between the office of the of the *810 Texas doctors, the homes of the patients and the pharmacy; the location of the pharmacy, the quantity and strength of the drugs on each prescription; and many other factors; Tewelde failed to discharge his corresponding responsibility by filling these prescriptions from the out-of-state practitioners.
Appellants aver that for the 3,048 prescriptions at issue that Mr. Tewelde filled, the pharmacy retained a Louisiana picture identification card for the person filling the prescription, and in many instances, had someone from Lafitte Drugs call the prescribing physician/clinic to verify that the prescription was for a legitimate medical need. Appellants assert that none of the factors considered by the Board was probative of whether Mr. Tewelde violated his corresponding responsibility.
The requisite corresponding responsibility of the pharmacist is to ascertain that a prescription is issued for a legitimate medical purpose. While Lafitte Drugs required that an individual have a Louisiana identification card prior to filling a prescription for out-of-state residents, most of the Louisiana identification cards were issued at or near the time the prescriptions were filled. Although appellants aver that having the pharmacy staff call the prescriber was sufficient under the circumstances, that action is only one factor that must be considered in determining whether the pharmacist fulfilled his corresponding responsibility. See Henry, 727 F.2d at 1379 (“Prescriptions brought in at | ¶ ¡¡frequent intervals by the same individual who mentions plans to share the prescriptions with others can provide cause for a pharmacist to believe the prescriptions are invalid despite their verification by the prescribing physician.”) There is no requirement that overt knowledge on the pharmacist’s part be established. Rather, what is required is proof “that the pharmacist had reason to believe that the prescription was not issued in the usual course of professional treatment.” Id.
At the hearing, Donna Dombourian, a DEA investigator, testified that the following instances should have caused Mr. Tew-elde to question the validity of the Texas prescriptions and decline to dispense any of those prescriptions:
If you’re getting large volumes of schedule two prescriptions, if you’re getting prescriptions from doctors you’re not familiar with, if you’re getting prescriptions from patients who live in other states and are coming to your store and you’re located in the middle of nowhere. If you’re filling prescriptions— the majority of prescriptions for Texas physicians and you’re not familiar with Texas law. Those are things that are suspicious. What he should have done — there’s no list that says what he should have done. What he should’ve done was not filled the prescription. But he filled them. He could’ve, he could’ve found out what Texas law is before he filled any of them to make sure they were all on legitimate pads. He could’ve not filled prescriptions that were stamped. He could’ve picked up the phone and called the DEA and said, hey, I’m getting a lot of prescriptions from Texas. Are these doctors legitimate? Should I not have filled these? He contacted the supplier and told the supplier what he was filling. And the supplier said, we’re not going to fill to you. As of April 8th, when the supplier cut him off, that should have been a clue to him to say, well, if the supplier’s not going to supply me because they’re suspicious of it, I’m the registered pharmacist, I better not fill them either. But he didn’t do all those things. I can’t tell you step by step what he should have done. He’s a pharmacist, he’s the one that is responsible for that. He could’ve *811 contacted the DEA offices in Texas and asked them about the prescriptions. He didn’t do that.
A member of the Board also opined that one prescription might slip through undetected, but the pattern or overall picture should trigger recognition.
Mr. Tewelde, who had been warned about corresponding responsibility and filling Texas prescriptions in 2008, was also aware that the relief pharmacist declined to fill the prescriptions from Texas prescribes and recognized that the patients came to Lafitte Drugs because “they couldn’t fill [the prescriptions] somewhere else.” Moreover, Mr. Tewelde was aware that these out-of-state | ^residents came in to fill schedule II prescriptions together and usually paid for the prescriptions with cash or credit cards. Considering the deficiencies in a number of the Texas prescriptions themselves, some of which have not been challenged on appeal, coupled with the influx of Texas prescriptions written by many of the same providers, we cannot conclude that the district court was manifestly erroneous in finding that Mr. Tew-elde failed to fulfill the corresponding duties owed by a pharmacist.
Appellants also contend that the Board abused its discretion when it denied their motion for rehearing, which they sought based on telephone records produced after the hearing. Said records allegedly reflected that in the vast majority of the prescriptions at issue, Lafitte Drugs telephoned the prescribing health care provider to ensure that the challenged prescriptions were written for a legitimate medical purpose.
Louisiana Administrative Code Title 46:LIII.351(B) provides the following grounds for granting a rehearing:
Grounds. The board or an interlocutory hearing panel may reconsider the motion for rehearing at the next regularly scheduled board meeting. The grounds for such action shall be either that:
1. the board’s decision was clearly contrary to the law or evidence; or
2. newly discovered evidence not available at the time of the hearing which may be sufficient to reverse the board’s decision; or
3. issues not previously considered ought to be examined; or
4. it is in the public interest to reconsider the issues and the evidence. [Emphasis added.]
See also LSA-R.S. 49:959 A(2)(A matter shall be subject to rehearing when “[t]he party has discovered since the hearing evidence important to the issues which he could not have with due diligence obtained before or during the hearing.”)
The record reflects that appellants received notice of the August 12, 2010 hearing on July 8, 2010. Appellants waited until August 3, 2010 to subpoena the records of the telephone company, AT & T. Thus, the district court may have 114found that the board believed appellants were not diligent in seeking issuance of the subpoena and did not show that the telephone records were “newly discovered evidence not available at the time of the hearing.”
Nevertheless, at the time of the August 12, 2010 hearing, appellants were aware that there was no return on the subpoena for the telephone records, but desired to proceed without them. Specifically, appellants’ counsel, in opening statements, noted:
And when it comes to that — well, first thing, I said the AT & T records. I’d like to reflect we did serve a subpoena upon AT & T through the Board. Apparently there has not been a production in response [thereto], I think that is material evidence to support his contentions as to who was called and when. *812 And because of the lack of that production in response to that, I do feel that we do have his testimony here. We did not want to push this, you know, off because we, you know, wanted to proceed and, you know, with the matter and not try to use procedural mechanisms to any benefit.
Considering the foregoing, we cannot conclude that the district court erred in this regard.
Appellants also contend that the record contains insufficient evidence to conclude that Mr. Tewelde dispensed all 3,048 prescriptions at issue in violation of his corresponding responsibility. Appellants assert that the fines imposed on the pharmacy and on Mr. Tewelde are not supported or sustainable by a preponderance of the evidence with regard to each specific prescription.
Additionally, appellants contend that the fines and sanctions imposed were excessive and made without due regard to the guidelines for imposing sanctions. Specifically, LAC 46:LIII.B21 provides:
A. The sanctions imposed by the board pursuant to R.S. 37:1241 of the Pharmacy Practice Act shall be based on the following guidelines.
1. Nature. The nature or seriousness of the violation.
2. Degree. The degree of culpability, knowledge and/or intent, or the responsibility to have knowledge.
3. Scope. The scope of circumstances involved.
4. Demeanor. Honesty and truthfulness of respondent.
5. History. History of prior offenses. [IS6. Sanctions. Prior sanctions.
7. Cooperation. Willingness of respondent to comply with applicable laws and regulations and avoid future violations.
8. Sufficiency. Sanctions are sufficient to remedy the problem.
Appellants contend that factors 4 through 8 clearly militate in favor of appellants, and given the absence of any prior offense or sanction, lesser fines and sanctions would have been appropriate herein.
The Board is authorized to fine up to $5,000.00 per violation, with each act in violation to be considered a separate violation. See LSA-R.S. 37:1241. The Board assessed Mr. Tewelde $15.00 per prescription and Lafitte Drugs $35.00 per prescription for the 3,048 schedule II prescriptions issued by Texas prescribers and dispensed by Mr. Tewelde between January 1 and April 14, 2010.[7]
Lafitte Drugs had been previously warned about corresponding responsibility when filling Texas prescriptions, yet had done nothing to correct the problem. Lafitte Drugs became the third highest dispenser of hydrocodone in the state, behind pharmacies located in large metropolitan areas, while located in a town with a population of 1500 and dispensing prescriptions prescribed 375 miles away. The fines were limited to the schedule II prescriptions issued by Texas prescribers and filled by Mr. Tewelde.[8] Further, in response to questioning by the Board’s counsel with regard to whether he still believes it was proper to fill the Texas prescriptions at issue with the knowledge he has now, Mr. Tewelde maintained that it was.
Considering the foregoing and the seriousness of the violations, we conclude that *813 the district court’s findings are supported and sustainable by a preponderance of the evidence. As such, we find that the district court did not err in affirming the fines and sanctions levied by the Board.
| ^Appellants’ assignments of error are without merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the district court. Costs of this appeal are assessed to appellants, Taddese Tewelde and Tewelde’s Lafitte Drugs.
AFFIRMED.

. Schedule II drugs are defined in LSA-R.S. 40:963(B) as follows:
(1) The drug or other substance has a high potential for abuse.
(2) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, and
(3)Abuse of the drag or other substances may lead to severe psychological or physical dependence.

. Schedule III drugs are defined in LSA-R.S. 40:963(C) as follows:
(1) The drug or other substance has a potential for abuse less than the drags or other substances listed in Schedules I and II.
*804 (2) The drug or other substance has a currently accepted medical use in treatment in the United States, and
(3) Abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence.

. These metropolitan areas consist of Baton Rouge and Metairie.

. In addition to the Louisiana identification cards, Lafitte Drugs also maintained copies of each individual's out-of-state driver’s license.

. Mr. Tewelde avers that although some of these prescriptions were filled after the doctors surrendered their DEA licenses, the prescriptions were written prior to their licenses being surrendered. However, the record also contains prescriptions that were issued and filled after the doctors surrendered their DEA licenses.

. The Board further found appellants in violation of the following statutes and regulations: LSA-R.S. 37:1225; LSA-R.S. 40:967(A)(1); 21 C.F.R.§ 1306.04(a); LAC 46:LIII.1103(J); LAC 46:LIII. 1105(B); LAC 46:LIII.2513(B); LAC 46:LIII.2527(A); and LAC 46:LIII.2513(B).

. Although the Board limited the fines to this three and half month time period, the record also reveals possible additional violations pri- or to referenced period.

. Appellants have not pointed to any specific schedule II prescription written by a Texas prescriber that they allege was prescribed for a legitimate medical purpose.