UNITED STATES of America, Plaintiff-Appellee,

v.

Dean HILL, Defendant-Appellant.

No. 79–5366.

United States Court of Appeals, Fifth Circuit.

Oct. 2, 1980.

T. Victor Bishop, Fulton, Miss., for defendant-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton III, Asst. U. S. Atty., Oxford, Miss., for plaintiff-appellee.

Before GOLDBERG, GARZA and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Dean Hill was convicted in a jury trial below of the knowing interstate transportation and sale of a stolen automobile in violation of 18 U.S.C. §§ 2312, 2313, respectively. He now appeals, arguing that the trial court erred in refusing his requested submission to the jury of an entrapment instruction. We affirm.

*Background*

The path of Hill's conviction began with his introduction to Mississippi Bureau of Narcotics undercover agent Charles Spillers on January 4, 1978. Agent Spillers, posing as a trafficker in stolen automobiles, had arranged to be introduced to Hill because of information he had obtained indicating that Hill dealt in stolen vehicles. In this initial meeting, which was secretly tape recorded by Agent Spillers, Hill boasted to Spillers of his longtime involvement in procuring and selling stolen vehicles, of the quality of his wares and the reliability of his operation, and of his past success in avoiding prosecution. He agreed, without the slightest hesitation, to furnish stolen cars to Spillers on a regular basis and tried to sell Spillers a stolen 1977 Corvette that he then had available. The tape recording and a transcript thereof were introduced at trial.

There is some discrepancy regarding possible contacts between Spillers and Hill for the period following that initial encounter until mid-May, 1978.[1] In a series of recorded conversations initiated by Spillers begin-

---

1. Agent Spillers testified that Hill had spoken to him frequently to offer to sell various stolen vehicles. Hill, on the other hand, testified that he had not made such offers or had any contact at all with Spillers during this period.

ning on May 27, however, the two worked out the arrangements for Hill's procurement from Illinois of the stolen vehicle that would become the basis of his arrest and indictment soon after he delivered it to Spillers in Mississippi.

At trial, Hill admitted having driven the car across state lines and having delivered it to Spillers. He maintained, however, that he had done so not knowing that the car was stolen, thus denying the criminal knowledge necessary to a violation of 18 U.S.C. §§ 2312, 2313. Relying on the longstanding rule in this circuit that a defendant may raise entrapment only if he admits commission of the underlying offense, *see, e. g., Government of Canal Zone v. Risbrook*, 454 F.2d 725 (5th Cir. 1972), the trial court denied Hill's requests for the submission of entrapment instructions. Hill now argues that since he admitted the *acts* of which he was accused, if not the requisite *mens rea*, he should have been entitled to the submission of the entrapment defense. We do not reach this controversial issue,[2] however, since we find that the record contains insufficient evidence to create a jury question on the issue of entrapment and, therefore, that the trial court did not err in its refusal to submit the question.

2. The law in this circuit with respect to a defendant's capacity to raise alternatively, both entrapment and lack of knowledge or intent appears, at least, to be in some disarray. *Compare, e. g. United States v. Brooks*, 611 F.2d 614, 618 (5th Cir. 1980) (holding defendant not entitled to submission of entrapment where he denied the requisite criminal knowledge) *and McCarty v. United States*, 379 F.2d 285 (5th Cir.), *cert. denied*, 389 U.S. 929, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967) (holding defendant not entitled to argue entrapment on charge of knowingly transporting marijuana where he admitted transportation of parcels in question but denied knowing they contained marijuana) *with United States v. Greenfield*, 554 F.2d 179 (5th Cir.), *cert. denied*, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978) (allowing submission of entrapment as alternative to defense of lack of criminal intent on charge of doctors' allegedly dispensing drugs). Moreover, the fundamental rule that a defendant may not alternatively rely on inconsistent defenses of entrapment and denial of the commission of the crime has come under increasing attack. *See, e. g., United States v. Daniels*, 572 F.2d

*Discussion*

Entrapment, the government's inducement of the commission of a crime by one not predisposed to commit it, *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932), "is an affirmative defense in that the defendant must present some evidence of entrapment before the issue is properly raised." *United States v. Gonzales*, 606 F.2d 70, 75 (5th Cir. 1979). While there are some variations in the precise formulation of a defendant's burden of production in this regard, *United States v. Tate*, 554 F.2d 1341, 1342–43 (5th Cir. 1977), both parties here have agreed that the standard was accurately stated by this court in *Pierce v. United States*, 414 F.2d 163, 168 (5th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969) (footnote omitted):

> If there is any evidence in the record that, if believed by the jury, would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it, then, as in all other cases, involving questions of guilt or innocence, the jury must be permitted to resolve the matter.[3]

535, 542 (5th Cir. 1978); *United States v. Demma*, 523 F.2d 981 (9th Cir. 1975) (en banc).

3. *Compare, e. g., United States v. Wolffs*, 594 F.2d 77, 80 (5th Cir. 1979) ("defendant must adduce some evidence, more than a scintilla, which tends to show government inducement and lack of predisposition") *with United States v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977) (must submit entrapment theory "for which there is any foundation in the evidence") *and with United States v. Gomez-Rojas*, 507 F.2d 1213, 1218 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975) (defendant must present "a prima facie case of entrapment indicating that Government created a 'substantial risk that the offense would be committed by a person other than one ready to commit it.' "). There is little indication, however, that these semantic discrepancies have realistically produced disparate results. In any event, the *Pierce* formulation of the requisite *quantum* of proof ("*any* evidence in the record") is among the most lenient. Moreover, as is demonstrated in text, *infra*, the *nature* of the proof required by the *Pierce* formulation ("that the government's conduct created a substantial

Once such evidence is produced, even if it arises from the prosecution's presentation, the ultimate burden of persuasion is on the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the offense. *United States v. Hammond*, 598 F.2d 1008, 1011 (5th Cir. 1979). Upon an examination of the record, accepting the testimony most favorable to the defendant as we must, *United States v. Wolffs*, 594 F.2d 77, 80 (5th Cir. 1979), we conclude that Hill failed to shoulder the threshold burden.

■ Concededly it was Agent Spillers who first sought out and initiated contact with Hill, and it was Spillers who first proposed the illicit transaction. To raise entrapment, however, a defendant must prove more than simply that the government first solicited him or merely provided the opportunity for the crime. *United States v. Costello*, 483 F.2d 1366, 1367–68 (5th Cir. 1973); *United States v. Bigham*, 421 F.2d 1344, 1346 (5th Cir.) *cert. denied*, 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970); *accord, United States v. Burkley*, 591 F.2d 903, 911–15 (D.C. Cir. 1978); *cert. denied*, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979); *United States v. Christopher*, 488 F.2d 849, 850–51 (9th Cir. 1973). While some opinions of this court have expressed the defendant's threshold burden in terms of requiring some evidence only of

government *inducement,* a reading of the facts of those cases reveals that "inducement" represents more than mere suggestion, solicitation, or initiation of contact and, in fact, embodies an element of persuasion or mild coercion functionally equivalent to that denoted in the *Pierce* formulation (conduct such as would "create a substantial risk that the offense would be committed by a person other than one ready to commit it").[4] *See, e. g., United States v. Hammond*, 598 F.2d at 1011 (testimony indicated that government had thought of scheme, attempted to "push" it on defendant, and that defendant had not favorably received the government plan); *United States v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977) (numerous attempts at setting up illicit deal had failed and witness testified that on at least one occasion defendant had directly rejected government entreaty); *United States v. Costello*, 483 F.2d at 1368 (upholding trial court's refusal to submit entrapment question, finding no "inducement" where there was no evidence of persuasion or coercion, even though government agent proposed illicit transaction to defendant).[5] *See also, Sorrells v. United States*, 287 U.S. at 441, 53 S.Ct. at 212. After reviewing the record, and particularly the transcriptions of the recorded conversations between Hill and Agent Spillers,[6] we find no evidence that Agent Spil-

---

risk that the offense would be committed by a person other than one ready to commit it") also is consonant with that required in practice to satisfy other formulations.

4. After a thorough review of the authorities, the D. C. Circuit recently arrived at the following formulation of the defendant's burden:

> [T]he trial judge must give instruction if there is any foundation in the evidence, when viewed in a light most favorable to the defendant, for a finding of "inducement"—that is, for a finding of persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, pleas based on need, sympathy, or friendship, or any other government conduct that would create a risk of causing an otherwise unpredisposed person to commit the crime charged.

*United States v. Burkley*, 591 F.2d 903, 914 (D.C. Cir. 1978).

5. While this court in *Pierce* observed that "inducement" might be present "in any case in

which the undercover agent initiated the negotiations for the criminal deal," 414 F.2d at 167 n.7, the court actually held on the merits that proof of such initiation of contact was not sufficient to entitle *Pierce* to reach the jury on entrapment. *Cf. United States v. Lentz*, 624 F.2d 1280, 1285–1286 (5th Cir. 1980) (while court observed that defendant's initial burden to show "inducement" had been met apparently by testimony indicating only that the government agent (who was also on trial) had proposed the illegal deal, such was not in issue on appeal since trial court had submitted question of entrapment to jury and defendant appealed only that court's refusal to find entrapment as a matter of law).

6. In their initial meeting on January 4, 1978, the following exchange took place:

lers went beyond merely proposing the illicit deal and engaged in any persuasive or

SPILLERS: Now they told me that you could deliver and deliver regularly, and that's what I'm looking for and

HILL: I can get you just about any, just tell me 'bout what you want and I can have it, just about anything you want there

SPILLERS: Oh a, like on a regular weekly basis?

HILL: Yeah, sure can. You just, I'll need to know a day or two ahead of time, you know . . . . .

\* \* \* \* \* \*

SPILLERS: Great great

HILL: I just, I go and show [my drivers] pretty well what I want, I say if I want that car sitting right there, I said I want that car right there and you just have some place to put it and the car will be sitting there. I don't never, I won't ever be around the car, all I do is, I just pay the boys . . . . .

SPILLERS: OK, let me ask you this, when can we start doing some business together?

HILL: Anytime you want to

SPILLERS: How about this coming weekend?

HILL: Be all right . . . . . I've got that . . Vette I'm going to have to move that mother . . . now.

SPILLERS: This is that '70?

HILL: Its a '77 Vette, its a nice son-of-bitch, its got 13,000, less than a year old, give better than $13,000 for the car.

SPILLERS: How much you want for it?

HILL: I'll take $2,500 for it. The other day I could have sold the car for $3,500 to a guy I been doing business with . . . . .

\* \* \* \* \* \*

SPILLERS: Has it been turned in?

HILL: It has now

SPILLERS: . . .

HILL: See I had 'til Monday morning on the damn thing

SPILLERS: You still got it in this area?

HILL: Yeah

SPILLERS: Well I

HILL: I can get it put any place you'd want it put.

On May 27, 1978, Spillers telephoned Hill to propose that Hill procure a stolen Chrysler automobile for him with the following result:

SPILLERS: I just want to check, got an order I need to fill around June 10th. Can you, you mentioned something before about Chryslers. Can you hook me up with new Chrysler New Yorkers around June 10th or 11th?

HILL: Uh, yeah, I think so.

SPILLERS: What kind of price?

HILL: Uh, heck I don't know. How much is something like that worth?

SPILLERS: Well, I want to get the lowest price I can.

HILL: Yeah. Uh, I don't know what it'd cost me, uh.

coercive tactics in order to recruit Hill. Spillers' role in the transactions appears to

SPILLERS: Why don't I check back with you in a couple of days, but uh, if we can agree on price, this, you can consider it a firm order.

HILL: All right. What do you want, two?

SPILLERS: Uh, one.

HILL: Just one.

SPILLERS: Just one.

HILL: All right.

Finally, on June 16, 1978, Hill telephoned Spillers to finalize the arrangements that led to the procurement and delivery of a stolen BMW automobile which was the subject of Hill's indictment.

HILL: Yeah, uh, . . . ., well I'm having hell on that, that damn uh, on them Chryslers. They got a damn new man under him.

SPILLERS: Uh huh.

HILL: Ain't no way you can substitute off on a BMW, are there?

SPILLERS: Uhhh, well, I tell you what, I needed this cause I got this sold and lined up. What kind of price could I get on the BMW?

HILL: It, it'll be from 18 to naw, 21 or 22 thousand. I, I'll get you one of them for 25.

SPILLERS: 25?

HILL: Yeah. See, what, what they done, uh, that's that's one of my problems last week—

SPILLERS: Uh huh.

HILL: They uh, they hired this damn new fellow—

SPILLERS: Uh huh.

HILL: —and that son-of-bitch then run an inventory and they running them all day today.

SPILLERS: Uh huh.

HILL: So, it got me in a hell of a, it's, it's making it, gonna make it bad damn hard to get one of them.

\* \* \* \* \* \*

SPILLERS: I see. Okay, well, on a BMW, I'm gonna have to make a call uh; there're two things, if I can go ahead and move it fast on the other end and I, you know, like I hadn't made any arrangements for that cause I didn't know—

HILL: What I thought, what I was thinking about uh, if you could do that, I'd bring it on in to you.

SPILLERS: Uh huh.

HILL: And uh, let that dude get his, what he's doing straightened out there, then I, I'll be able, I'll get that New Yorker then.

SPILLERS: Okay.

HILL: I, I might, hell well, I could get you 2 or 3 of them, I guesss [sic].

Hill sought at trial to belie the appearance displayed in the taped conversations of his predisposition—nay, eagerness—to engage in the illicit dealings proposed by Spillers by asserting that he was not serious in his responses to Spillers and was just "shooting him a line."

He now argues that this also should have created a jury question on entrapment. While

have been played out well within the limits of the law.

Hill contends, however, that the five-month hiatus between his initial conversation with Spillers and the conversations in May and June in which he agreed to procure and deliver the stolen automobile involved here demonstrates a pattern of persistent recruitment pressure by Spillers to which Hill finally succumbed. The evidence in the record does not support such an inference, however. In fact, while Agent Spillers testified that Hill had made several offers to supply stolen vehicles during that period, Hill testified that he had not seen Spillers at all and that Spillers had phoned him only about five times during these five months. Hill gave no indication of the content or character of these phone calls. We cannot conclude that this testimony provides any evidence of persistent recruitment pressure sufficient to raise a jury question of entrapment, particularly in light of Hill's apparent eagerness to deal even at the initial meeting, *see* note 6, *supra*. *See Pierce v. United States*, 414 F.2d at 165, 168–69 (finding evidence insufficient to raise jury question of entrapment even though agent phoned defendant 20 to 25 times over a period of months prior to the illicit transaction).[7]

Hill also contends that the question of entrapment was raised by his testimony that Spillers had told him he was a used car salesman and that "he would not have been in Chicago to pick up the BMW automobile except for the persuasions of Spillers that the business was legitimate." These assertions, however, are not pertinent to the question of entrapment but bear instead on Hill's other defense, specifically, that he lacked the requisite criminal knowledge or intent required by §§ 2312 and 2313. If

Hill truly had been led to believe that the car he delivered was not stolen, he would not have been entrapped; he simply would not have committed any offense. *See, e. g., United States v. Greenfield*, 554 F.2d 179, 183 (5th Cir.), *cert. denied*, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973). Thus, as was true of Hill's other assertions, no entrapment issue is raised on this basis.

Finally, in a slightly different vein, Hill argues that he was entitled to submission of an "entrapment" theory of sorts based on his testimony that it was the government, through Agent Spillers and an alleged cohort, that actually provided him the stolen auto which he later delivered to Spillers. *See United States v. Bueno*, 447 F.2d 903 (5th Cir.), *cert. denied*, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973) (finding "entrapment" as a matter of law where government agent provided contraband for the sale of which (to another agent) defendant was convicted). Aside from the fact that Hill did not request a specialized *Bueno* instruction at trial, however, the principle of *Bueno* was rejected and the case effectively overruled by the Supreme Court in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (upholding trial court's refusal to submit entrapment issues, even though government supplied contraband for the sale of which defendant was convicted, where predisposition was conceded). *United States v. Garrett*, 583 F.2d 1381, 1390–91 (5th Cir. 1978); *United States v. Benavidez*, 558 F.2d 308, 309 (5th Cir. 1977). Thus, the trial court committed no error in failing to give such an instruction.

Consequently, for the reasons set forth above, we affirm Hill's conviction.

**AFFIRMED.**

---

Hill's explanation for his conduct may very well have negated the otherwise obvious inference of his predisposition, however, it in no way suggests the untoward inducement on the part of Spillers that is necessary to raise a jury issue. Moreover, the testimony does not even provide affirmative evidence of Hill's lack of predisposition, but only casts into question otherwise forceful prosecution evidence that Hill was ready and willing to commit the crime.

**7.** Hill further protested that he was actively "trying to" stay away from Spillers during this period.

He gave no indication, however, that Spillers was actually persistently seeking to contact him or that Spillers ever made any attempt to overcome any alleged resistance on Hill's part.