**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold Donald HENRY,
Defendant-Appellant.**

**No. 83–1366.**

United States Court of Appeals,
Fifth Circuit.

Dec. 12, 1984.

Gee, Circuit Judge, dissented and filed opinion in which Reavley, Garwood, E. Grady Jolly, Patrick E. Higginbotham and Robert Madden Hill, Circuit Judges, joined.

John H. Hagler, Curtis D. Glover, Dallas, Tex., for defendant-appellant.

James A. Rolfe, U.S. Atty., James T. Jacks, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GAR-

WOOD, JOLLY, HIGGINBOTHAM, DAVIS, and HILL, Circuit Judges.*

TATE, Circuit Judge:

We granted en banc rehearing, 727 F.2d 1373 (5th Cir.1984), to resolve a conflict in circuit precedent as to when a defendant in a criminal trial is entitled to have the jury instructed on his defense of entrapment.

Our precedential rule is uniform that a defendant may not invoke the entrapment defense by requesting that the issue be submitted to the jury while he denies committing the act charged in the indictment. *United States v. Garrett,* 716 F.2d 257, 270 (5th Cir.1983); *United States v. Rey,* 706 F.2d 145, 147 (5th Cir.1983). On the other hand, as will be described more fully below, our prior precedents are divided (or at least confusing) as to whether a defendant is entitled to have the jury decide his entrapment defense if, by his testimony, he admits the acts charged in the indictment but denies they were committed with the culpable mental state required for conviction.

■ For reasons to be set forth more fully, we hold that:

1. If the government's evidence raises an entrapment issue, in order to be entitled to an entrapment instruction the defendant may simply rest on his plea of not guilty and require the government to prove beyond reasonable doubt that he is guilty both of performing the acts charged and of his criminal intent in doing so.

2. If either the government's or the defendant's evidence fairly raises the issue of entrapment, the defendant may take the stand or adduce evidence on his own behalf that negates his criminal intent and yet be entitled to have his entrapment defense decided by the jury. However, he may not, in that event, deny that he has committed the acts charged, because this would create an impermissible inconsistency in his defense.

GARWOOD, JOLLY, HIGGINBOTHAM, and

---

* GEE, Circuit Judge, with whom, REAVLEY,

We thus adopt the view of the preponderant decisions of this circuit on the issue[1] and overrule expressions that may be deemed to be to the contrary in other circuit decisions.[2] Accordingly, we reverse the convictions in this case, and we remand for a new trial.

*Overview*

By our panel opinion, 727 F.2d 1373 (5th Cir.1984), we affirmed the conviction of the defendant Henry, a licensed pharmacist, on eleven counts of dispensing controlled substances for improper purposes in violation of 21 U.S.C. § 841(a)(1) and 21 C.F.R. §§ 1306.04(a) and 1306.06. Henry admitted filling all prescriptions charged by the indictment, but he flatly and steadfastly denied that in doing so he ever intended to dispense drugs for non-medical purposes.

The evidence shows that Henry filled these prescriptions at the behest of a paid government informant and an undercover police agent. Before submission of the case to the jury, Henry requested the district court to charge the jury, in addition to standard criminal intent instructions that, if the jury found Henry had no previous intent or purpose to violate the law but was induced or persuaded by governmental agents to commit the crime, the jury should acquit him as a victim of entrapment.[3] The district court refused to so charge the jury, on its belief that under circuit precedent (*see* note 2 *supra*) the defendant could not at one and the same time deny committing an act with criminal intent and also assert that he was entrapped into doing the act because any criminal intent found by the jury was first implanted into his mind by the government.

On submission to the jury without the entrapment instruction, the defendant was convicted of all counts.[4]

The panel conceded, as is explicated more fully in part I below, that the record evidence would support an inference " ' "that the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it," ' " *United States v. Webster*, 649 F.2d 346, 349 (5th Cir.1981) (en banc), so as to entitle the defendant to an entrapment instruction—except for his testimony as to his lack of criminal intent in dispensing the drugs.

The panel concluded that, to be entitled to an entrapment instruction, the defendant must not only concede the acts charged,

HILL, Circuit Judges, join, dissenting.

1. *United States v. Garrett*, 716 F.2d 257, 269–71 (5th Cir.1983); *United States v. Greenfield*, 554 F.2d 179, 181–83 (5th Cir.1977), *cert. denied*, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978); *United States v. McKinley*, 493 F.2d 547, 550–51 (5th Cir.1974); *United States v. Harrell*, 436 F.2d 606, 611–12 (5th Cir.) *cert. denied*, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); *United States v. Smith*, 407 F.2d 202, 203–04 (5th Cir.1969), *cert. denied*, 397 U.S. 949, 90 S.Ct. 972, 25 L.Ed.2d 131 (1970); *Sears v. United States*, 343 F.2d 139, 142–44 (5th Cir.1965); *United States v. Henderson*, 237 F.2d 169, 171–72 (5th Cir.1956).

2. *United States v. Rey*, 706 F.2d 145 (5th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 698, 79 L.Ed.2d 164 (1984); *United States v. Nicoll*, 664 F.2d 1308 (5th Cir.), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982); *United States v. Brooks*, 611 F.2d 614 (5th Cir. 1980); *United States v. McCarty*, 379 F.2d 285 (5th Cir.1967). *See also United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir.1973).

3. We have given only the substance of the requested charge. As the panel indicated, the requested jury instruction on entrapment properly stated the law on the issue, if Henry was entitled to have the jury so instructed. The requested jury instruction was taken substantially verbatim from Special Instructions No. 5 ("Entrapment"), Fifth Circuit Pattern Jury Instructions (1978), and from the almost identical charge in 1 Devitt and Blackmar, Federal Jury Practice and Instructions, § 13.09 (3d ed. 1977), as revised in 1980, see Cumulative Supplement, § 13.09 (1983).

4. Despite the defendant Henry's denial of criminal intent in dispensing the drugs pursuant to doctor's prescriptions and the exculpatory evidence to this effect upon which he relies, the evidence before the jury and inferences from it are sufficient to support the jury's rejection of this exculpatory testimony and its finding, in convicting, instead that the defendant Henry knew the drugs he dispensed were to be used for recreational, not medical, purposes. The en banc court does not disturb this finding of the panel, nor does it question the reasons of the panel for rejecting contentions raised by Henry on his appeal, other than that with regard to the entrapment issue now decided by us.

but also that "culpable intent must be conceded before entrapment's inquiry into where the intent began becomes material." 727 F.2d at 1377. The panel so concluded on its analysis that the entrapment defense is "in the nature of a confession and avoidance." *Id.* Accordingly, to invoke the entrapment defense, the defendant's admission must not only concede the physical act charged but also the culpable intent, because until the accused admits that "a *crime*, an act or acts done with an accompanying culpable intent, has been committed, no occasion arises to examine" whether the defendant's criminal liability may be avoided on the ground that he was entrapped into committing the crime. *Id.*

The panel recognized that its holding was in conflict with other circuit precedents (*see* note 1 *supra*), such as *United States v. Greenfield*, 554 F.2d 179 (5th Cir.1977), *cert. denied*, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978)—which the panel described as "a decision on facts all but identical to those of today's case," 727 F.2d at 1374—, but it relied upon expressions in another line of circuit decisions (*see* note 2 *supra*) as supporting its view as better reasoned than the former.

We conclude, however, that this analysis overlooks the nature of the entrapment defense. As set forth in part II *infra*, under decisions of the Supreme Court, the fundamental nature of the entrapment defense available under a plea of Not Guilty is a denial that any crime within the intent of Congress was committed by the accused. The defense is thus not a plea of confession and avoidance that requires an accused to admit that he committed a crime before he may contend that his acts in so doing were the result of entrapment.

Further, by asserting the entrapment defense while denying subjective criminal intent with regard to the acts admittedly committed, under our preponderant circuit jurisprudence (*see* note 1, *supra*) the accused is not with "impermissible" inconsistency denying criminal intent in doing them. Instead of being forced to concede his criminal guilt in order to assert an entrapment defense, the accused is being permitted both to testify to his lack of subjective criminal intent, in which he himself may deeply believe, and also (should the jury conclude otherwise) to assert this defense as recognized by the Supreme Court— namely, that nevertheless no criminal violation was proved because any criminal acts by the accused found by the jury were the result of governmental inducement that he do them, despite his lack of predisposition.

We shall now discuss in more detail the facts and applicable legal principles as follows: I. The entrapment showing in this case; II. The nature of the entrapment defense under decisions of the Supreme Court and this circuit; III. The availability of an entrapment defense and entrapment instructions for a non-testifying defendant; and IV. Whether any different rationale or principle requires that the entrapment defense be unavailable to an accused who testifies that he committed the physical acts charged, but swears that he did not do them with criminal intent.

## I.

In order for a defendant to be entitled to entrapment instructions and to have the jury decide his entrapment defense, the record must contain evidence from which the jury could find (1) governmental inducement that might cause one to act criminally where he otherwise would not and (2) the accused's lack of intent, before contact by governmental agents, to commit the crime charged.[5] As the panel noted, "[t]he

---

**5.** As an en banc decision by us summarized: [A] defendant who wishes to assert an entrapment defense must initially come forward with evidence " 'that the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.' " Once the defendant has carried this burden, the government must,

if it is to prevail, prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged.
*United States v. Webster*, 649 F.2d 346, 349 (5th Cir.1981) (en banc). *See United States v. Fischel*, 686 F.2d 1082, 1085 (5th Cir.1982); *United States v. Hill*, 626 F.2d 1301, 1303–04 & nn. 3–5 (5th Cir.1980). Though we spoke in *Webster* of

record contains evidence adequate to support an inference by the jury favorable to Henry on the [entrapment] issue" and its submission to the jury, 727 F.2d at 1374, but the panel viewed the entrapment defense as unavailable to an accused who testifies to his lack of criminal intent in committing the acts charged, *id.*

█ We now advert briefly to the record evidence by which the jury might infer Henry's lack of criminal intent before contact by governmental agents and governmental inducement for Henry to commit a crime where he otherwise would not have done so, which results in Henry's entitlement to assert his entrapment defense.

Henry, a licensed pharmacist, was charged with filling physicians' prescriptions for Schedule II narcotics knowing that his customers had no legitimate medical purpose for them. The customers in question were a paid informant and an undercover police officer. During the summer of 1982 they took several prescriptions, written by physicians cooperating with law enforcement authorities in the investigation, to Henry to be filled. Their conversations with Henry were tape-recorded.[6]

Henry testified in his own behalf that he did not know the prescriptions he filled would be used other than for a legitimate medical purpose. He denied hearing most of the inculpatory comments made by the informant and the undercover officer, explaining that he was very busy with his work. The governmental agents represented to Henry that they had actually seen the doctors and that the doctors had prescribed the drugs in question. Henry testified that he relied on the existence of apparently valid prescriptions written by licensed phy-

sicians who had examined his customers. Further, Henry had telephoned the Drug Enforcement Administration before the investigation began and asked about guidelines for dispensing Schedule II narcotics prescribed by physicians. He was told to rely on his own judgment.

To induce Henry to fill the prescriptions, governmental agents used reputable licensed physicians to write the prescriptions given to Henry, admittedly not for medical purposes, and these physicians were instructed by the agents to verify them if Henry telephoned to check them out. On one occasion that is precisely what Henry did, and the physician verified the prescription. The informant and the undercover officer also assured Henry that they had been examined by the physician who wrote the prescription submitted to Henry. The informant was persistent in his entreaties to Henry to fill the prescriptions. Even after Henry told him he would not fill a prescription in the name of another and would not fill an expired prescription, the informant persisted in his effort to have Henry fill them.

The record thus supports the predicate required before an accused is entitled to have his entrapment defense submitted to and decided by the jury.

## II.

█ The fundamental rationale of the entrapment defense, as established by the Supreme Court, is that a defendant charged with a criminal offense is not guilty if the criminal intent was implanted in him by the government. This view has been adhered to by the Court in a series of opinions, despite the views in each instance

---

the evidence with which the defendant "must ... come forward," it is clear that burden may be satisfied by identifying evidence in the government's case which shows entrapment. *Sherman v. United States,* 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958); *United States v. Groessel,* 440 F.2d 602, 606 (5th Cir.), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 712 (1971). In this case, a basis for the entrapment defense is found in evidence offered both by the government and by the defense.

6. While in Henry's drugstore, the informant and the undercover police officer stated, often indirectly, that they would inject some of the narcotics with a syringe, that they would sell or trade some of the narcotics, and that they would attempt to obtain more prescriptions from doctors in the names of others but for their own use.

of a minority of the justices that the defendant is guilty of the crime but due process prevents conviction because of the conduct of governmental officials. *Hampton v. United States*, 425 U.S. 484, 495, 96 S.Ct. 1646, 1653, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 439, 93 S.Ct. 1637, 1646, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 378, 78 S.Ct. 819, 823, 2 L.Ed.2d 848 (1958); *Sorrells v. United States*, 287 U.S. 435, 453, 53 S.Ct. 210, 217, 77 L.Ed. 413 (1932).

This minority view in the Supreme Court, similarly to the panel's analysis, thus regards the entrapment defense as in the nature of a confession and avoidance. However, in *Sorrells, Sherman, Russell,* and *Hampton,* the majority of the Court consistently has described the entrapment defense as raised by a general plea of not guilty, as subjectively focused on predisposition, and as concerned with the actual guilt or innocence of the defendant, rather than as an avoidance of punishment upon proof of guilt, because of the government's entrapment. We ourselves consistently have adhered to the majority view expressed in the *Sorrells, Sherman, Russell* and *Hampton* holdings. *See, e.g., United States v. Webster,* 649 F.2d 346, 348–49 (5th Cir.1981) (en banc).

■ In *Sorrells,* the Court held it error for the trial court to deny an entrapment instruction in a prosecution for the possession and sale of untaxed liquor. The Court explained that the entrapment doctrine exists as a principle of statutory construction. It springs from the "absurd consequences" of finding that Congress enacted criminal statutes intending to declare guilty of crime persons whose acts are the result of a "criminal design [which] originates with the officials of the Government." *Sorrells v. United States,* 287 U.S. at 442, 446, 53 S.Ct. at 212, 214. The key to entrapment, then, lies in the mind of the defendant, in the origin of the "criminal design," and the defense applies where there is a reasonable doubt that the defendant did not have the mental state required by Congress for conviction.

[T]he defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. The predisposition and criminal design of the defendant are relevant.

*Id.* at 451, 53 S.Ct. at 216 (citation omitted). The Government considers the defense as analogous to a plea of pardon or of *autrefois convict* or *autrefois acquit.* It is assumed that the accused is not denying his guilt but is setting up special facts in bar upon which he relies regardless of his guilt or innocence of the crime charged. This, as we have seen, is a misconception. The defense is available, not in the view that the accused though guilty may go free, but that the Government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct.

*Id.* at 452, 53 S.Ct. at 216. By this language, the Court necessarily rejected the view of Justice Roberts, stated in a separate opinion, that the entrapment doctrine does not exist as a principle of statutory construction but as "a fundamental rule of public policy." *Id.* at 457, 53 S.Ct. at 218.

In its subsequent decisions, the Supreme Court expressly declined invitations to change *Sorrells'* definition of the entrapment doctrine.

In *Sherman,* over the forceful contentions of Justice Frankfurter in a concurring opinion, the majority adhered to the view of entrapment stated in *Sorrells* and concluded that the issue "is for the jury as part of its function of determining the guilt or innocence of the accused." *Sherman v. United States,* 356 U.S. at 377, 78 S.Ct. at 823.

It has been suggested that in overturning this conviction we should reassess the doctrine of entrapment according to principles announced in the separate opinion of Mr. Justice Roberts in Sorrells v. United States....

. . . . .

To dispose of this case on the ground suggested would entail both overruling a leading decision of this Court and brushing aside the possibility that we would be creating more problems than we would supposedly be solving.

*Id.* at 376–77, 78 S.Ct. at 823.

Next, in *Russell,* over the dissent of Justice Stewart, who like Justices Roberts and Frankfurter believed entrapment to be a due process issue focused only on the propriety of the government's investigative conduct, the Court reemphasized the subjective predisposition focus of the entrapment doctrine, a focus on the origin of the criminal intent, and "decline[d] to overrule ... *Sorrells* [and] ... *Sherman.*" *United States v. Russell,* 411 U.S. at 433, 93 S.Ct. at 1643.

Finally, in *Hampton,* over the dissent of Justice Brennan, who again called for recognition of entrapment as an objective due process protection permitting a defendant to avoid punishment even though guilty, the Court emphasized the Court's adherence to the *Sorrells* formulation of the entrapment doctrine:

> In *Russell* we ... reaffirmed the principle of *Sorrells v. United States* ... and *Sherman v. United States* that the entrapment defense "focus[es] on the intent or predisposition of the defendant to commit the crime." ... rather than upon the conduct of the Government's agents.
>
> . . . . .
>
> In holding that "[i]t is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play," ... we, of course, rejected the contrary view of the dissents in that case and the concurrences in *Sorrells* and *Sherman.*

*Hampton v. United States,* 425 U.S. at 488–89, 96 S.Ct. at 1649.

Sitting en banc, we summarized this Supreme Court jurisprudence:

> The justification for the [entrapment] defense is "that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense, but was induced to commit them by the Government." *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973). Three major Supreme Court cases decided over a span of 41 years, establish that entrapment occurs "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Sorrells v. United States,* 287 U.S. at 442, 53 S.Ct. at 212–213; accord, *United States v. Russell,* 411 U.S. at 4248–49, 93 S.Ct. at 1641; *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958).

*United States v. Webster,* 649 F.2d 346, 348–49 (5th Cir.1981) (en banc).

■ Consistent with this summary of Supreme Court directives, our inquiry always has been on the defendant's predisposition, his intent or willingness—before contact with government agents and inducement—to commit the crimes charged. *E.g., United States v. Hill,* 626 F.2d 1301, 1303–04 (5th Cir.1980). The concern is thus that the accused is not guilty, since he had no criminal intent not implanted by the government, rather than that he is guilty but may avoid the consequences of his criminal conduct because of the government's undue inducement.

### III.

■ From these principles we have concluded, as have other circuits, that a *nontestifying* defendant may—by examination of witnesses and argument—contest every element of the charged offense and still request and obtain an entrapment instruction. The defendant is not required to testify or to concede guilt in order to pursue the entrapment theory. *United States v. Groessel,* 440 F.2d 602 (5th Cir.1971), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 712 (1971). *See United States v.*

*Valencia*, 645 F.2d 1158, 1172 (2d Cir. 1980); *United States v. Annese*, 631 F.2d 1041, 1045–47 (1st Cir.1980). *See generally United States v. Dean*, 666 F.2d 174 (5th Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). *But cf. United States v. Whitley*, 734 F.2d 1129, 1139 (6th Cir.1984) (non-testifying defendant must admit guilt to urge entrapment).

In *Groessel*, the defendant was convicted of conspiracy to transport stolen automobiles. On appeal he urged entrapment as a matter of law. The government urged that the question need not be considered because the defendant did not admit his crime at trial. We firmly rejected the government's contention.

> This position is clearly without merit. Ordinarily the defense is not available where the defendant denied the very acts upon which the prosecution is predicated.... Groessel, however, chose not to testify; therefore, no evidence inconsistent was introduced. Of course a plea of not guilty is not repugnant to the defense of entrapment.

*United States v. Groessel*, 440 F.2d at 605.

Any other holding would "raise a serious fifth amendment question." *United States v. Annese, supra*, 631 F.2d at 1047. In no other area of law does the defendant lose the right to put the government to its proof solely because he wishes the jury to determine whether he should be acquitted based on relevant evidence in the record. If the defendant does not testify, it is not his admission of criminality that triggers the jury's obligation to consider the entrapment defense. It is triggered by the presence of sufficient evidence of inducement and predisposition in the record to raise an entrapment issue. If this were not so, the defendant's right to have the jury evaluate all the relevant evidence and to consider every issue controlling the guilt-innocence determination would depend on his willingness to confess in whole or part.

Thus, without special pleading or concession, an accused who does not testify may, by his not guilty plea, raise a defense as to entrapment (his willingness or intent before contact with government investigators to commit the charged crime) and as to his specific intent thereafter to commit that crime. The accused may rest upon his not guilty plea and ask the jury to evaluate all of the evidence in the case relevant to a guilty or not guilty verdict, including evidence that, because of entrapment, he did not have the requisite criminal intent.

The panel holding is open to the (perhaps unintended) interpretation that even a non-testifying defendant would be required to admit his guilt of the crime charged before he would be entitled to instructions on an entrapment defense. This interpretation is unwarranted and cannot be sustained under controlling jurisprudence.

## IV.

The question squarely confronting us, then, is whether a different rule should apply when (as here) a defendant elects to testify to his personal belief that he acted without criminal intent. We think not. It is entirely consistent with the nature of the jury function and with the nature of the entrapment defense to require the jury to consider both the existence and the quality of the defendant's alleged intent. Nor do we believe that in the light of values thereby advanced that it is impermissibly inconsistent for an accused both to claim that his admitted acts were without criminal intent, but that nevertheless any act he so committed was induced by governmental entrapment. Did he intend to commit the crime? If so, what was the origin of that intent?

In the absence of specific Supreme Court guidance, the circuits have split over the defendant's right to deny criminal intent while testifying and then, through his attorney's argument and the court's instructions on the law, to urge the entrapment defense.[7] Most of these decisions give lit-

---

**7.** For a circuit-by-circuit breakdown, *see also United States v. Valencia*, 645 F.2d 1158, 1170–72 & nn. 12–18 (2d Cir.1980), and Annotation,

Availability in Federal Court of Defense of Entrapment Where Accused Denies Committing Acts Which Constitute Offense Charged, 54 A.L.

tle or no explanation for the result reached.[8] As has been indicated (see notes 1 and 2, supra) our own jurisprudence is also "in some disarray" on this question. *United States v. Hill*, 626 F.2d 1301, 1303 n. 2 (5th Cir.1980).

In this circuit, the fountainhead case on this issue is *United States v. Henderson*, 237 F.2d 169 (5th Cir.1956), in which we held that the defendant could claim entrapment even though he denied criminal intent. The subsequent decisions, based upon *Henderson*, established the preponderant circuit view that one may admit the act but deny the intent, so long as this testimony is not "impermissibly inconsistent." *United States v. Garrett*, 716 F.2d 257, 271 (5th Cir.1983). See summary of circuit rulings to this effect, 716 F.2d at 269–271; see also decisions cited in note 1 supra.

In *Henderson*, we reversed the conviction for moonshine conspiracy because the trial court denied an entrapment charge where the defendant admitted moonshining but denied the intent to join a conspiratorial agreement. In so holding, we relied on the view that it is not too inconsistent to deny criminal intent or guilty knowledge and to urge also, where there is sufficient evidence of government inducement, that the government has not disproved predisposition beyond a reasonable doubt.

The defendant's effort to prove lack of criminal intent, according to the *Henderson* analysis, did not necessarily disprove either the inducement or predisposition elements of the entrapment inquiry. *Henderson* taught, moreover, that it is the jury's function alone to determine whether the government has proved criminal intent beyond a reasonable doubt.

If the evidence fails to prove by the required standard that the defendant committed the act charged or had the requisite criminal intent, then, of course, the defense of entrapment is unnecessary. Usually, however, that cannot be foretold when the proof is being offered in advance of the jury's verdict. Then, according to the circumstances and the nature of the case, proof of entrapment may or may not be so contrary or repugnant to proof that the defendant is otherwise not guilty, or rather to a lack of the required proof that the defendant is otherwise guilty, that the proof of the one necessarily disproves the other.

*Henderson v. United States*, 237 F.2d at 172–73. See *United States v. Smith*, 407 F.2d 202, 204 (5th Cir.1969) (entrapment instruction appropriate even though defendant admitted charged act of transferring narcotics but denied criminal intent to sell them), cert. denied, 397 U.S. 949, 90 S.Ct. 972, 25 L.Ed.2d 131 (1970); *Sears v. United States*, 343 F.2d at 142–44 (5th Cir.1965) (reversing failure to instruct on entrapment where defendant denied knowledge of conspiracy).

Thus, in *United States v. Greenfield*, 554 F.2d 179 (5th Cir.1977), cert. denied, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978), a case virtually identical to the one before us, we re-affirmed the principle stated in *Henderson*. A physician was charged with writing prescriptions, knowing that the prescriptions would not be used for a legitimate medical purpose. The physician-defendant testified and denied guilty knowledge. The trial court refused a jury instruction on entrapment because of the defendant's testimony, even though the evidence of inducement supported one, and the jury convicted the defendant. We

R.Fed. 644. See generally, note 5, infra; 8A Moore's Federal Practice ¶ 26.04[4](b) (1984). Annotation, Availability in State Court of Defense of Entrapment Where Accused Denies Committing Acts Which Constitute Offense Charged, 5 A.L.R. 4th 1128.

8. Compare Note, Denial of the Crime and the Availability of the Entrapment Defense in the Federal Courts, 22 B.C.L.Rev. 911 (1981) (ana-

lyzing law in all circuits and approving Fifth Circuit rule found to be stated in *Henderson* and *Greenfield*). See generally Comment, *United States v. Demma*: Assertion of Inconsistent Defenses in Entrapment Cases Allowed, 1975 Utah L.Rev. 962; Grant, The Serpent Beguiled and I (Without Scienter) Did Eat—Denial of Crimes and the Entrapment Defense, 1973 U.Ill.L. Forum 254.

reversed, holding that "[w]hile the defendant asserts that the prescriptions continued to be proper, we think that he may also assert that to the extent that they became improper he was induced to commit a crime by a government agent." 554 F.2d at 183. As in *Henderson,* we noted that it is the role of the jury to determine the existence of guilty knowledge. After it does so, rejecting the defendant's testimony, it is completely logical for the jury then to turn to the entrapment question:

> Necessarily, the issue of intent or guilty knowledge was a factual issue for the jury to resolve on the basis of circumstantial evidence under the totality of the circumstances. It was a subjective determination.

*Greenfield,* 554 F.2d at 183.

■■■■ We now reaffirm the rule stated in *Henderson* and *Greenfield.* Entrapment is not in the nature of confession and avoidance; therefore, the nature of the doctrine itself does not require a defendant to confess criminal intent or guilty knowledge in order to have a jury consider the entrapment issue. Rather, as the Supreme Court and our prior decisions have recognized, entrapment is a focus on predisposition— the origin of the criminal intent in issue. Whether the defendant had the criminal intent required for conviction is a jury issue. Whether he was predisposed to commit the charged crime, i.e., whether, focusing on the period before the commencement of the charged criminal episode, one can say that the criminal intent or design originated with government agents, is also a jury issue.

Entrapment, as a doctrine, asks, therefore, what was in the defendant's mind *before* he did the charged acts. The defendant's denial of criminal intent does not bind the jury, and, if the jury should find criminal intent, the entrapment issue should not be withdrawn from the jury if there is evidence that such intent was the result of actions by government agents. If, then, the jury finds the defendant had the charged criminal intent at the time of the charged acts, the jury must address the

entrapment issue and determine the origin of that intent. There is sufficient consistency in this process to promote "[t]he common goal of all trials, civil and criminal, of issues of fact [which] is to arrive at the truth." *Henderson v. United States, supra,* 237 F.2d at 172.

■■■■ It is, then, not too inconsistent for a defendant to testify that he did not have the criminal intent required for conviction and then, through his lawyer's argument and the court's instruction on the law, to urge the jury, in the event it rejects his personal view concerning intent, to find that the evidence requires acquittal on the basis of the entrapment doctrine. Indeed, proof of lack of criminal intent often may be much of the proof of both inducement and lack of predisposition. *United States v. Greenfield,* 554 F.2d 179, 183 (5th Cir. 1977); *Henderson v. United States,* 237 F.2d 169, 172–73 (5th Cir.1956). That is precisely the situation in this case with the defendant Henry. The evidence showed his insistence on prescriptions by licensed physicians who examined their patients. It showed that Henry declined to fill stale prescriptions or those in the names of persons not appearing before him. And it showed he resisted entreaty to do otherwise. This same evidence supported both an inference of no predisposition and also an inference of lack of criminal intent at the time Henry filled the prescriptions for which indicted.

■■■■ Our holding is rooted in the fact that criminal intent is a "subjective determination," an "issue for the jury to resolve on the basis of circumstantial evidence under the totality of the circumstances." *United States v. Greenfield, supra,* 554 F.2d at 183. The very nature of that process, as this court observed in *Henderson,* means that a jury may disbelieve, based on the objective evidence, a defendant's personal view concerning his own intent. *Henderson v. United States, supra,* 237 F.2d at 173. Such evaluation of evidence is central to the jury's function. It is equally fundamental that the jury must evaluate *all* evidence in the record and, similarly,

determine that nevertheless the intent it so found was implanted by governmental inducement. The jury's traditional role should not be pared down simply because a defendant expresses a personal belief in his lack of criminal intent.

 Unlike a defendant's ordinary ability to know whether he committed the charged act itself, intent necessarily has an amorphous and subjective quality that permits reasonable people, even the defendant and the jurors, fairly to disagree over whether his intent was criminal at the time the act was committed. Accordingly, it is not inconsistent with a criminal trial's "moral content and ... ultimate concern with guilt or innocence," *United States v. Rey*, 706 F.2d at 147, to instruct the jury to evaluate the entrapment issue, should it disbelieve a defendant's denial of criminal intent. Indeed, this case makes that point clearly, because Henry denied criminal intent but admitted that it could be inferred from the objective evidence:

> Q. If these matters were recorded correctly, and the transcripts are correct, would you agree they sound bad?
>
> A. Yes, sir.
>
> Q. All right. Was it your intent at this time to dispense drugs for a non-medical purpose?
>
> A. No, sir. It was never my intent to dispense drugs for non-medical purposes.

## V.

In this case, it is not seriously disputed that Henry was entitled to an entrapment instruction if he was not disabled from claiming it. The government's case itself contained more than sufficient evidence to warrant an entrapment instruction, and the defendant's testimony also supported an entrapment defense. While we indicate no view on the merits of Henry's defense on this ground, we do hold that it was error to deny him jury consideration of this defense.

Therefore, Henry's convictions are REVERSED, the resulting sentence is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

---

GEE, Circuit Judge, with whom, REAVLEY, GARWOOD, E. GRADY JOLLY, PATRICK E. HIGGINBOTHAM and ROBERT MADDEN HILL, Circuit Judges, join, dissenting.

Today's issue is a simple one: Whether, having sworn that he had no intent to dispense drugs for non-medical purposes, Harold Henry is entitled to have his conviction reversed because, in the face of that testimony, the trial judge refused to deliver a jury instruction requested by Henry on the entrapment defense. The rationale of this defense is that Congress could not have intended to punish, as crimes, acts denounced by the letter of the law but performed by persons previously undisposed to them under the impulse of a criminal intent planted in their minds by the government. *Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932).

To have sustained that defense in Henry's case then, the jury would have been required, not only to disbelieve Henry's sworn testimony that he acted without the specific intent that forms the core and crucial element of the offense with which he was charged,[1] but to believe instead, not only that Henry acted with precisely the specific intent that he swore he did not harbor, but that the intent which he swore he did not have originated with the government. In short, Henry claims the right to swear that he had no criminal intent and in the same breath to argue that he had one that did not originate with him. Finding these positions not "impermissibly incon-

---

1. The physical acts themselves, of handing over drugs upon presentation of a physician's prescription, are in no sense criminal or *malum in se*. Admitting these, as "required" by the major- ity opinion, is therefore scarcely an admission of any kind: criminal intent is the essence of the offense and is denied by Henry under oath.

sistent," the majority reverses Henry's conviction and endorses such tactics for use in our Circuit.

Because I am scarcely able to conceive of positions more inconsistent than these—that Henry both did and did not have a specific intent—I am unable to grasp the usage of "impermissibly" in the majority opinion. Indeed, if what the majority sanctions today is "permissible," I cannot identify what is not. After today, it is open to the wisely counseled guilty criminal defendant to take the stand and swear to whatever seems tactically indicated, presenting the jury with a true smorgasbord of conflicting defenses: I hadn't the requisite criminal intent; I have an alibi; I was insane; I was entrapped.[2]

Nothing in Supreme Court authority constrains us to adopt such a rule. This the majority correctly recognizes, noting "the absence of Supreme Court guidance ...." (At 211). Nor do our own authorities, which are in conflict and do not, in any event, bind us sitting en banc. The majority embraces it freely, as a pure matter of policy choice.

Such a rule, in my view, trivializes "the common goal of all trials, ... to arrive at the truth." *Henderson v. United States,* 237 F.2d 169, 172 (5th Cir.1956). To me, it is redolent of the sporting theory of justice and denigrates a criminal trial's "moral content and ... ultimate concern with guilt or innocence that are inconsistent with permitting the accused to say 'I didn't do it, but if I did, the government tricked me into it.'" *United States v. Rey,* 706 F.2d 145, 147 (5th Cir.1983), citing *United States v.*

*Brooks,* 611 F.2d 614 (5th Cir.1980). I would not hear a criminal defendant swear to one thing and argue another, wholly inconsistent one. Since the majority opinion approves that tactic, I respectfully dissent.

### Flaws in the Majority's Reasoning

I have noted my disagreement with the majority's declaration that, while doubtless inconsistent, it is not "impermissibly" inconsistent to permit a criminal defendant to swear one way about his intent and argue another. I find other difficulties in the process by which it arrives at that position.

Much authority, none of it of great relevance, is discussed by the majority along the way.[3] From it the majority derives various concerns, among them the notion that requiring concessions of a defendant as a price for his asserting the entrapment defense would "raise a serious fifth amendment question." (At 211, citing *United States v. Annese,* 631 F.2d 1041 (1st Cir. 1980)). If this be so, I do not understand by what warrant the majority requires—as it does—a testifying defendant to concede the *acts* charged as elements of the crime before granting him the defense. (At 209). The same constitutional spectre that the majority views with dread seems to me to be raised by requiring *any* concession as a price for obtaining the defense, so that if the concern expressed is justified, I do not see how the majority concludes that anything short of the Ninth Circuit's rule, which requires no concession whatever, can satisfy it. *United States v. Demma,* 523 F.2d 981 (9th Cir.1975) (en banc).[4]

---

**2.** One wonders if such latitude would be exercised even in a civil case; one, say, in which a defendant swore unequivocally that he never borrowed the cracked pot and at the same time sought a jury interrogatory asking whether it was not already cracked when he borrowed it.

**3.** Honesty requires the concession, however, that the majority is correct in rejecting the view that today's entrapment defense is one in the nature of confession and avoidance, a view sometimes espoused in our earlier authorities, *e.g., Siglar v. United States,* 208 F.2d 865, 868 (5th Cir.1953). As now perceived by the Supreme Court, it is instead a claim that what was

done was not a crime at all, having been done with an intent supplied by the government, and that, however literally it may have denounced it, Congress could not have meant to punish such an act. Apparently, the Court regards such an intent as negotiable, but not without recourse.

**4.** The short answer to these concerns is that entrapment, being a defense devised by the courts and—as the majority observe—grounded in statutory construction rather than the Constitution, is accessible on such terms as the courts—and ultimately the Court—find appropriate.

Nor am I able to divine by what process the majority selects the essential element of intent as that which can properly be denied in testimony but assumed (at the least) in jury argument. In many cases, as in this one, a concession of the physical acts constituting elements of the charged offense is scarcely a concession at all; even so, the acts are as much elements of the crime as is the specific intent. I see no ground for such a distinction but expedience: it is simply easier and more plausible to double-talk a mental state—of which the defendant alone has direct knowledge—than to contend that one both did and did not deliver a particular bottle of prescription drugs on a given date.

As nearly as I can identify the majority's proffered reason for this distinction, it seems to be that "intent necessarily has an amorphous and subjective quality that permits reasonable people, even the *defendant* and the jurors, fairly to disagree over whether his intent was criminal at the time the act was committed." (At 214, emphasis added). I am far from sure what is meant by this passage.

In the first place, I see nothing amorphous ("indeterminate, formless, unorganized") about the specific intent required to be proved to convict Henry of the offense with which he was charged: it was that he knowingly sold prescription drugs for non-medical use. In the second, insofar as the passage may be read to suggest that the defendant *himself* may not know whether he acted with the requisite intent, it has no application to Henry. There may well be defendants who are unsure of their motives, but Henry is not one of them. This case does not involve a defendant honestly uncertain of why he acted as he did. It concerns Henry, who stated clearly, explicitly, specifically, and *under oath* that he acted without criminal intent. There was nothing amorphous about Henry's testimony, and, in Henry's own mind, nothing amorphous about his intent. The majority's position may be valid as to a confused defendant; it is clearly invalid as to a defendant like Henry who is sure enough of his intent to swear to it.

Finally, if the passage means that the jury may disbelieve the defendant's sworn testimony that he did not knowingly sell prescription drugs for recreational purposes, but believe that the criminal intent with which he did so was not his but that of the government, then it is a mere restatement of one consequence that the majority rule can produce—and not a reason for adopting it. Indeed, it is this very consequence that, in my view, should not be entertained in a proceeding so serious as a criminal trial: that a defendant take the stand, solemnly swear to one thing, argue the contrary of his sworn testimony, and be acquitted on the latter basis.

### The Effect of the Majority Rule

Although I am unable to discern in the majority opinion a reason for adopting the rule, I have little difficulty in foreseeing the effect of doing so. Unique to our jurisprudence and heretofore of narrow scope, the entrapment defense now bids fair to become a standard, alternative defense in that class of cases which requires the use of informants and undercover police work—those arising from the pernicious and proliferating market in illegal drugs, among others. I see neither policy nor reason in tilting such proceedings further away from the pursuit of truth and more toward sporting contests in which the defendant is allowed to swear to one state of facts and contend for other, inconsistent ones as well. It can never be true that a defendant both had and did not have a specific criminal intent on any given occasion. It cannot be true in Harold Henry's case; and since it cannot be true, I do not see why we should entertain a claim by him that it is. I therefore respectfully dissent.